BOARD OF EDUCATION OF THE TOWNSHIP OF BER-
NARDS, SOMERSET COUNTY, PLAINTIFF-RESPON-
DENT, v. BERNARDS TOWNSHIP EDUCATION ASSOCIA-
TION, DEFENDANT-APPELLANT, AND AMERICAN AR-
BITRATION ASSOCIATION, NEW JERSEY EDUCATION
ASSOCIATION AND SAMUEL RANHAND, DEFENDANTS.

Argued January 22, 1979—Decided March 15, 1979.

312

*Mr. Sanford R. Oxfeld* argued the cause for appellant (*Messrs. Rothbard, Harris* and *Oxfeld,* attorneys).

*Mr. Sidney H. Lehmann,* General Counsel, argued the cause for *amicus curiae,* Public Employment Relations Commission (*Mr. Lehmann,* attorney; *Mr. Lehmann* and *Mr. James F. Schwerin,* Deputy General Counsel, on the brief).

*Mr. Gordon A. Millspaugh, Jr.* argued the cause for respondent (*Messrs. Young, Rose* and *Millspaugh,* attorneys; *Mr. Millspaugh* and *Ms. Amy R. Piro,* on the briefs).

*Mr. David W. Carroll,* General Counsel, argued the cause for *amicus curiae,* New Jersey School Boards Association

(*Mr. Carroll,* attorney; *Mr. Carroll* and *Mr. John E. Collins,* on the brief).

*Ms. Erminie L. Conley,* Assistant Attorney General, argued the cause for *amicus curiae,* New Jersey State Commissioner of Education (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

PASHMAN, J. This case requires us to both apply and expand upon the principles which we enunciated last Term in *State v. State Supervisory Employees Ass'n,* 78 *N. J.* 54 (1978), *Township of West Windsor v. PERC,* 78 *N. J.* 98 (1978), and *Ridgefield Park Education Ass'n v. Ridgefield Park Board of Education,* 78 *N. J.* 144 (1978). Specifically, we must determine the validity of a clause of a public sector collective agreement which provides that disputes concerning the withholding of a teacher's salary increment "for inefficiency or other good cause," *N. J. S. A.* 18A:29–14, shall be subject to "advisory," as opposed to "binding," arbitration.

The facts of this case are not in dispute. On July 1, 1975, the Bernards Township Board of Education (Board) and the Bernards Township Education Association (Association) — the majority representative of the Board's teaching employees — entered into a collective agreement covering the 1975-1976 school year. Article XVIII, paragraph D of that agreement provided in part:

An employment or adjustment increment [in salary for any teacher] may be withheld [by the Board] in whole or in part for inefficiency or other just cause related to the performance of duties and only in accordance with the following:
\*       \*       \*       \*       \*       \*       \*       \*
4. Any action by the Board to withhold an increment or any part thereof shall be subject to appeal to arbitration \* \* \*. The arbitrator shall have the authority to advise the restoration of all or part of the increment withheld \* \* \*.

On March 17, 1976, the principal of William Annin Junior High School informed teacher Harold Cutting that he would

advise the Board to withhold Cutting's salary increment for the 1976–1977 school year. In response to this communication, the Association filed with the Board a grievance on Cutting's behalf. By letter dated April 28, 1976, the Board notified Cutting that the grievance was denied and that his salary increment would be withheld. A demand for arbitration was thereupon filed in accordance with Article XVIII, paragraph D of the parties' collective agreement.

Rather than accede to the Association's demand, the Board instituted suit in the Superior Court seeking to enjoin the arbitration. The Board asserted, *inter alia,* that a decision to withhold a teacher's salary increment "for inefficiency or other good cause," *N. J. S. A.* 18A:29–14, is a matter of managerial prerogative and hence not subject to arbitration. On November 5, 1976, the injunction was granted. The Appellate Division affirmed in an unpublished *per curiam* opinion dated February 23, 1978. We granted the Association's petition for certification. 77 *N. J.* 499 (1978). We now reverse.

I

A

Before discussing the merits, we feel constrained to comment upon the procedural aspects of the present dispute. As we made clear last Term, under the existing legislative scheme it may be necessary to invoke the jurisdiction of both the Public Employment Relations Commission (PERC) and the Superior Court in order to completely resolve a disagreement concerning the arbitrability of a particular dispute. *See Ridgefield Park, supra,* 78 *N. J.* at 153–156; *State Supervisory Employees, supra,* 78 *N. J.* at 83–84. As stated in *Ridgefield Park*:

When one party claims that a given dispute is arbitrable under the contract and the other party resists arbitration, the party desiring arbitration should seek an order from the Superior Court compelling arbitration. * * * [However], [w]here the trial judge determines

that the real controversy is not one of contractual arbitrability, but rather concerns the propriety of the parties negotiating and agreeing on the item in dispute, he should refrain from passing on the merits of that issue.

PERC has primary jurisdiction to make a determination on the merits of the question of whether the subject matter of a particular dispute is within the scope of collective negotiations. * * *

[78 *N. J.* at 153–154]

These guidelines were not followed in the present dispute. In seeking the injunction in Superior Court, the Board asserted, *inter alia,* that a decision to withhold a teacher's salary increment is managerial in nature and hence any agreement to subject that decision to arbitration is *ultra vires* and unenforceable. Thus, the gravamen of the Board's complaint was that the subject matter of its dispute with the Association did not fall within the scope of collective negotiations. Consequently, the trial judge should have refrained from ruling whether the parties had contractually agreed to arbitrate the dispute until PERC had decided the threshold issue of negotiability. *See Ridgefield Park, supra,* 78 *N. J.* at 155.

The Board argues that the above guidelines are inapplicable to the present controversy because its resolution requires a reconciliation of *N. J. S. A.* 18A :29–14 — a statute which is part of the Education Law, *N. J. S. A.* 18A :1–1 *et seq.* — with the Employer-Employee Relations Act, *N. J. S. A.* 34 :13A–1 *et seq.,* and not merely an interpretation of the latter statute. We conclude that the Board's contention in this regard lacks merit.

As we emphasized last Term, PERC has been designated by the Legislature as the forum for initial determination of scope of negotiations matters because of its special expertise in this area. *See Ridgefield Park, supra,* 78 *N. J.* at 153–156; *State Supervisory Employees, supra,* 78 *N. J.* at 83–84. In carrying out its duties, PERC will at times be required to interpret statutes other than the Employer-Employee Relations Act. Indeed, in no other way could that body implement our holding in *State Supervisory Employees* that

the terms of a collective agreement cannot contravene a specific legislative enactment. To therefore hold that PERC is ousted of jurisdiction in any controversy involving an asserted conflict between a collective agreement and a statute not part of the Employer-Employee Relations Act would deprive our courts of that body's expertise in a large class of scope of negotiations disputes. We cannot believe that the Legislature intended such a result. Consequently, we conclude that PERC's primary jurisdiction does extend to controversies involving asserted conflicts between the Employer-Employee Relations Act and other statutory schemes.

## B

█ Although the proper procedure was not followed, we have concluded that a remand to PERC at this late date would serve no salutary purpose. Hence, we will decide the issues posed at the present juncture.

We have recently noted that the doctrine of exhaustion of administrative remedies serves three primary goals: (1) the rule ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2) administrative exhaustion allows the parties to create a factual record necessary for meaningful appellate review; and (3) the agency decision may satisfy the parties and thus obviate the need for unnecessary adjudication. *See Paterson Redevelopment Agency v. Schulman*, 78 *N. J.* 378, 386–388 (1979):

Each of these goals has been satisfied. Although PERC's jurisdiction was not invoked, this Court has not been deprived of that body's expertise. Not only has PERC, in an unrelated case, decided the same question here at issue, *see East Brunswick Bd. of Ed.*, PERC *No.* 77–6, 2 *NJPER* 279 (August 25, 1976), but it has also accepted this Court's invitation to participate in this very case as *amicus curiae*. Indeed, PERC itself argues against a remand, stating that sending the case back at this point "would not add anything as this Court

already has the benefit of PERC's thinking on this subject * * *."

The factual pattern of the present controversy is both uncomplicated and undisputed. Moreover, those facts necessary for our decision were adequately developed in the Superior Court below. Finally, we are convinced that a remand will not obviate the need for us to ultimately decide this issue. The precise question herein posed has already arisen in three suits aside from the present one. *See Board of Educ. of Edison Twp. v. Edison Twp. Educ. Ass'n,* 161 *N. J. Super.* 155 (App. Div. 1978); *Education Ass'n of Passaic v. Passaic Bd. of Educ.,* 166 *N. J. Super.* 250 (App. Div. 1977); *East Brunswick Bd. of Educ.,* PERC No. 77-6, 2 *NJPER* 279 (August 25, 1976). *Cf. Clifton Teachers Ass'n, Inc. v. Clifton Bd. of Educ.,* 136 *N. J. Super.* 336 (App. Div. 1975). Hence, the issue is both important and likely to recur.

It should also be noted that our *Ridgefield Park* and *State Supervisory Employees* opinions were rendered subsequent to the Appellate Division decision in this case. Thus, the Superior Court did not retain jurisdiction through any desire to circumvent the procedural guidelines there established, but rather in the good faith belief that the forum chosen was proper under the circumstances. *See Paterson Redevelopment Agency, supra,* 78 *N. J.* at 388–389.

## II

Before determining the propriety of subjecting salary increment disputes to arbitration, it is necessary to ascertain the precise type of arbitration to which the parties agreed. A solution to this question is, of course, a matter of contract interpretation and requires solely a scrutiny of the terms of the collective agreement in fact entered into by the parties.

As previously noted, Article XVIII, paragraph D of that agreement provides that the Board's decision to withhold a teacher's salary increment "for inefficiency or other just cause related to the performance of duties" shall be subject

to arbitration. Further, the arbitrator is granted the authority "to *advise* the restoration of all or part of the increment withheld . . ." (emphasis supplied).

The "advisory" nature of the arbitrator's decision regarding increment disputes is to be contrasted with the effect given his determination pursuant to Article III, paragraph C of the agreement — a section which deals generally with arbitration as to grievances concerning "the interpretation, application, or violation of [the] Agreement * * *." See Article III, para. A, § 1. There, the contract explicitly states that "[t]he decision of the arbitrator . . . shall be *final and binding* on the parties." Article III, para. C, § 6(c) (emphasis supplied).

It is thus clear that the parties intended that the effect of the arbitrator's decision in controversies concerning withheld salary increments would differ from that accorded his determination in other types of disputes. In increment disputes, the decision is merely to be "advisory"; it is not to be accorded binding or final effect.[1]

We must presume that when entering into their collective agreement, the parties were cognizant of *N. J. S. A.* 18A:29–14. That statute provides in part:

Any board of education may withhold, for inefficiency or other good cause, the employment increment, or the adjustment increment, or both, of any member in any year * * *. The member may appeal from such action to the [C]ommissioner [of Education] under rules prescribed by him. The commissioner shall consider such appeal and shall either affirm the action of the board of education or direct that the increment or increments be paid. * * *

[1] It is true that disputes concerning withheld salary increments might arguably fall within the general category of grievances concerning "the interpretation, application, or violation of [the] Agreement," and thus be encompassed within the general arbitration guidelines set forth in Article III. However, by specifically emphasizing the "advisory" nature of salary increment arbitration in Article XVIII, the parties must have intended that arbitration concerning this matter would not be governed by the "final and binding" language of Article III. In no other way can the apparently conflicting provisions of their agreement be harmonized.

Consideration of the appeal procedure established by this statute in conjunction with the "advisory" arbitration called for by the collective agreement sheds light on the type of arbitration which the parties envisioned.

By specifically giving the arbitrator's decision mere "advisory" effect, we conclude that the parties did not intend to substitute the arbitrator's decision for that of the Commissioner. Nor did the parties seek to limit the Commissioner's review powers in any way. Rather, arbitration was intended to be merely an intermediate step in the grievance procedure. Since the decision is only "advisory," the parties must have envisioned that the Commissioner would not be required to accept any of the arbitrator's findings or conclusions in making a determination pursuant to *N. J. S. A.* 18A:29–14. The arbitrator's recommendations were intended to constitute merely one source of information — along with the findings of the Board and the Association — upon which the Commissioner could base his decision. Thus, the agreement contemplates that the Commissioner will have the benefit of the arbitrator's findings, but can disregard them to the same extent he can disregard any other independent source of information.

## III

Our inquiry into the validity of this advisory arbitration clause must begin with a determination as to whether the withholding of a salary increment "for inefficiency or other good cause," *N. J. S. A.* 18A:29–14, constitutes a term and condition of employment. As we stated last Term,

[T]erms and conditions of employment are those matters [1] which intimately and directly affect the work and welfare of public employees and [2] on which negotiated agreement would not significantly interfere with the exercise of inherent managerial prerogatives pertaining to the determination of governmental policy.

[*State Supervisory Employees,*
*supra,* 78 *N. J.* at 67]

*See Ridgefield Park, supra,* 78 *N. J.* at 156; *Dunellen Bd. of Educ. v. Dunellen Educ. Ass'n,* 64 *N. J.* 17, 25–26, 29 (1973); *Englewood Bd. of Educ. v. Englewood Teachers Ass'n,* 64 *N. J.* 1, 7 (1973).

There can be no question but that the withholding of a salary increment "directly affect[s] the work and welfare" of public school teachers. Such an increment constitutes part of the compensation due a teacher for services rendered — a matter which can fairly be characterized as one of the most important considerations inducing a teacher to enter into the employment relationship.

▉ However, *N. J. S. A.* 18A:29–14 explicitly authorizes a local board to withhold an increment only for "inefficiency or other good cause." The decision to withhold an increment — although directly affecting the work and welfare of a teacher — is thus dependent upon an evaluation of the quality of the services which the teacher has rendered. The purpose of the statute is thus to reward only those who have contributed to the educational process thereby encouraging high standards of performance. In determining whether to withhold a salary increment, a local board is therefore making a judgment concerning the quality of the educational system. It is reasonable to assume that an adversely affected teacher will strive to eliminate the causes or bases of "inefficiency." The decision to withhold an increment is therefore a matter of essential managerial prerogative which has been delegated by the Legislature to the Board. It cannot be bargained away. *See Ridgefield Park, supra; State Supervisory Employees, supra; Dunellen Bd. of Educ., supra; Clifton Teachers Ass'n, Inc. v. Clifton Bd. of Educ.,* 136 *N. J. Super.* 336 (App. Div. 1975).[2]

---

[2]Our decision in *Galloway Tp. Bd. of Educ. v. Galloway Tp. Educ. Ass'n,* 78 *N. J.* 25 (1978), is not inconsistent with the result which we have today reached. In *Galloway,* we held that a board's unilateral alteration of an *automatic* right to an annual salary increment, during the course of collective negotiations, constituted an

Thus, had the collective agreement here at issue attempted to substitute an arbitrator's judgment as to the existence of "inefficiency or other good cause" for that of the Board, that clause would be *ultra vires* and unenforceable. Such a provision would in effect delegate government policy-making to an individual who is not accountable to the public at large. *See Ridgefield Park, supra,* 78 *N. J.* at 161–165; *Township of West Windsor, supra,* 78 *N. J.* at 114–115. As we emphasized in *Ridgefield Park,*

The Legislature [in enacting the Public School Education Act of 1975, *N. J. S. A.* 18A:7A–1 *et seq.*] has determined that community involvement in educational decisions, insuring some democratic control over such matters is a significant part of a thorough and efficient system of education in this state. * * * There would be little room for community involvement if agreements concerning educational policy matters could be negotiated behind closed doors and disputes concerning that agreement settled by an arbitrator who lacks public accountability. * * *

[78 *N. J.* at 161–162]

For the same reasons, the parties could not have validly agreed to oust the Commissioner of Education from his duty under *N. J. S. A.* 18A:29–14 to review the Board's decision. Nor could the parties have lawfully contracted to narrow in any way the scope of the review process. Pursuant to the Education Act of 1975, the Commissioner and the State Board of Education have been delegated the responsibility to establish uniform statewide standards of pupil proficiency, *N. J. S. A.* 18A:7A–6, and to ensure the existence of a qualified, competent and efficient teaching staff, *N. J. S. A.* 18A:7A–5(g). The Commissioner's authority to review the withholding of a teacher's salary increment for inefficiency or other good cause, *N. J. S. A.*

unfair labor practice. That case did not concern the validity of agreements which circumscribe the Board's responsibility to withhold increments based upon unsatisfactory teacher performance. On the contrary, the withholding of salary increments in *Galloway* was in no way related to the evaluation of particular teachers.

18A:29–14, constitutes one method by which he may carry out these responsibilities. As such, his decision in this regard is a matter pertaining to governmental policy-making, and cannot be delegated to an arbitrator.

Finally, even assuming the absence of an arbitration clause of any type, the parties could not have validly agreed to alter the "inefficiency or other good cause" standard by which the Board and Commissioner are to gauge the propriety of withholding increments.[3] Not only would such an agreement impermissibly intrude upon matters of managerial prerogative, it would also contravene the specific standard of evaluation established by *N. J. S. A.* 18A:29–14 and hence be unenforceable under our decision in *State Supervisory Employees, supra.*

The Association concedes this latter point. Nevertheless, it maintains that so long as an arbitrator is required to adhere to the "inefficiency or other good cause" standard, *State Supervisory Employees* sanctions final and binding arbitration as to disputes over withheld salary increments. The Association points to language contained in that opinion which is to the effect that under *N. J. S. A.* 34:13A–5.3, the parties to a collective agreement can negotiate grievance *procedures* which supersede specific statutes providing for particular dispute-resolution mechanisms. *See* 78 *N. J.* at 80 n. 6.

The Association misconceives the thrust of our decision in *State Supervisory Employees.* In that opinion, we explicitly ruled that *N. J. S. A.* 34:13A–5.3 applies solely to "grievance procedure[s] . . . for the resolution of disputes

---

[3]Although the collective agreement here at issue provides that the Board may withhold an increment for "inefficiency or other just cause related to the performance of duties," we do not read the parties' contract as attempting to alter the "inefficiency or other good cause" standard established in *N. J. S. A.* 18A:29–14. Rather, we conclude that the words used in the collective agreement were intended to be identical in meaning with those used in the statute.

*concerning the terms and conditions of employment." Id.* at 80 n. 6 (emphasis supplied). As emphasized above, decisions as to the withholding of salary increments for "inefficiency or other good cause" are not terms and conditions of employment, but rather matters pertaining to the quality of the educational system. As such, these matters are to be determined in the first instance by local boards of education, subject to review by the Commissioner.

We also find unpersuasive the Association's contention that arbitration of increment disputes merely involves "fact-finding" and does not require forays into policymaking: Having determined the "facts" upon which the Board premised its decision to withhold an increment, the arbitrator would of necessity be required to determine whether those facts amounted to "inefficiency or other good cause." The latter decision is so inextricably intertwined with the former as to be inseparable from it. Hence, were he permitted to render a binding award, the arbitrator would be impermissibly encroaching upon the Board's and the Commissioner's managerial prerogatives. *See Township of West Windsor, supra,* 78 *N. J.* at 116 n. 4; *Borough of Stone Harbor v. Wildwood Local 59, Policemen's Benevolent Ass'n,* 164 *N. J. Super.* 375 (App. Div. 1978).

Accordingly, we hold that the parties to a collective agreement may not validly contract to submit disputes concerning the withholding of salary increments for inefficiency or other good cause to final and binding arbitration.

## IV

The collective agreement here at issue does not purport to grant the arbitrator power to render a "final and binding" decision regarding salary increment disputes. Rather, that decision is merely to be accorded "advisory" status. Thus, the agreement contemplates that the Commissioner, in making his determination pursuant to *N. J. S. A.* 18A:29–14, need not accept the arbitrator's findings or conclusions.

In *Ridgefield Park, supra,* we held that there are but two categories of subjects in public employment negotiation: (1) mandatorily negotiable terms and conditions of employment, and (2) non-negotiable matters of government policy. 78 *N. J.* at 162. As to subjects falling within the former category, *Township of West Windsor* and *State Supervisory Employees* established that the parties may agree upon any dispute-resolution mechanism to resolve disagreements, including submission of such disputes to binding arbitration. As to subjects in the latter class, we ruled that the parties could not encroach upon managerial prerogatives by contracting for binding arbitration. *Ridgefield Park, supra,* 78 *N. J.* at 160; *see, e.g., Dunellen Bd. of Educ., supra,* 64 *N. J.* at 29. We did not, however, express an opinion as to the validity of advisory arbitration as an intermediate procedural step in the resolution of disputes concerning the applicability of those managerial decisions to a particular employee. We today hold that such an agreement is permissible.

Advisory arbitration does not give rise to the adverse consequences that might ensue were binding arbitration deemed permissible. Inasmuch as the Commissioner's review powers are neither aborted nor circumscribed, the danger that governmental policy will be determined by an individual not accountable to the public at large is absent. Indeed, the Commissioner is entitled to exercise his discretion in any manner in which he sees fit.

Not only is advisory arbitration not detrimental to the public interest, its utilization may well bring about beneficial consequences. The arbitrator's findings and conclusions constitute an additional source of information for the Commissioner and will therefore assist him in carrying out his statutory responsibilities. Moreover, this additonal source of information — unlike the input from the Board and the Association — will derive from a disinterested observer. The arbitrator's advisory recommendation may induce the parties to resolve their dispute without invoking the Commissioner's

jurisdiction. Finally, we cannot overlook the potential favorable effects that such a procedure will have upon the morale of public employees, inasmuch as they will be permitted to present their cause — even if only as an initial matter — to an individual whom they do not consider aligned in interest with the Board.

Thus, an advisory arbitration clause does not interfere with the exercise of managerial prerogative. Moreover, its inclusion in a collective agreement will directly and intimately affect the work and welfare of the public employee. Consequently, a provision in a negotiated grievance procedure calling for advisory arbitration — even if it encompasses disputes concerning the applicability of managerial prerogatives — is itself a term and condition of employment, as that phrase is defined in our caselaw. See *ante* at 320; *State Supervisory Employees, supra,* 78 *N. J.* at 67; *Ridgefield Park, supra,* 78 *N. J.* at 156. Seen in another way, advisory arbitration provides public employees with the opportunity to make known their grievances. *N. J. Const.* (1947) Art. I, para. 19.

Thus, we hold that the parties may agree to submit to advisory arbitration disputes concerning the applicability to individual employees of matters of governmental policy. The parties to this dispute were therefore free to contract to so arbitrate the question of whether Mr. Cutting's salary increment was withheld for "inefficiency or other good cause." Of course, the parties could not have validly agreed to submit to binding or advisory arbitration issues concerning the propriety of the "inefficiency or good cause" standard itself. Such an endeavor would be wholly useless, inasmuch as the Commissioner is bound by statute to apply the standard.[4]

---

[4]Under *N. J. S. A.* 18A:29–14, the Commissioner has been delegated the responsibility to promulgate rules and regulations concerning the manner in which an aggrieved teacher may appeal adverse Board determinations. Pursuant to this grant of authority, such rules have been adopted. *See N. J. A. C.* 6:24–4.1; *N. J. A. C.*

In the present case, the parties expressly agreed to submit increment disputes to advisory arbitration. Since a contractual grievance procedure providing for advisory arbitration is indisputably a term and condition of employment, this agreement is valid and enforceable. Accordingly, the judgment of the Appellate Division is reversed, the order enjoining arbitration is vacated, and the Board is hereby ordered to proceed to advisory arbitration.

*For reversal and vacation* — Chief Justice HUGHES and Justices MOUNTAIN, JACOBS, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For affirmance*—None.

6:24–1.1 to 6:24–1.19. These rules require a teacher to file a petition with the Commissioner within 90 days of his receipt of notice of the Board's decision to withhold an increment. *N. J. A. C.* 6:24–1.2. A teacher who proceeds to advisory arbitration is not relieved from compliance with this 90-day filing requirement. However, in order that the goals underlying our decision to permit this type of arbitration be achieved, the Commissioner must wait until the arbitration is completed and an advisory decision rendered before conducting a hearing on the merits of the teacher's petition.