606 A.2d 345

PAMELA PROBST, PETITIONER–RESPONDENT, v. BOARD OF EDUCATION OF THE BOROUGH OF HADDONFIELD, CAMDEN COUNTY, RESPONDENT–APPELLANT.

Argued February 19, 1992—Decided May 19, 1992.

*Joseph F. Betley* argued the cause for appellant (*Capehart & Scatchard,* attorneys; *Alan R. Schmoll,* of counsel).

*Kenneth A. Sandler* argued the cause for respondent (*Selikoff & Cohen,* attorneys; *Joel S. Selikoff,* of counsel).

*Richard A. Friedman* submitted a brief on behalf of *amicus curiae* New Jersey Education Association (*Zazzali, Zazzali, Fagella & Nowak,* attorneys).

*Marlene Zuberman* submitted a letter in lieu of brief on behalf of the State Board of Education.

*Donna M. Kaye,* Associate Counsel, submitted a brief on behalf of *amicus curiae* New Jersey School Boards Association (*Sheila Dow–Ford,* Director, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal concerns the interplay between two statutes, *N.J.S.A.* 18A:29–4.1 (Section 4.1) and *N.J.S.A.* 18A:29–14 (Section 14), which address salaries for public-school teachers.

Section 4.1 allows local school boards to adopt binding salary schedules outlining compensation for teachers for periods of up to three school years. The guides place teachers at varying steps according to their education and experience. On completion of each year of successful performance, teachers progress on the guide, and their salaries increase accordingly.

Section 14 permits local school boards to withhold salary increments from teachers who have not performed satisfactorily during the previous year. The statute also explicitly states that absent affirmative action to the contrary, local boards are not required to pay back any denied increments once a teacher resumes satisfactory performance. Section 14 does not, however, address how compensation for teachers is to be computed in the years following a withholding. This appeal concerns the effect of Section 4.1 on a teacher who has had her salary

increments withheld under Section 14 but who subsequently performs satisfactorily.

## I.

Pamela Probst is a tenured teacher employed by the Board of Education of Haddonfield Borough (Board). The Board adopted a salary schedule for its teachers for the school years 1986–87 through 1988–89 pursuant to *N.J.S.A.* 18A:29–4.1, which provides that

[a] board of education of any district may adopt a one, two or three year salary policy, including salary schedules for all full-time teaching staff members which shall not be less than those required by law. Such policy and schedules shall be binding upon the adopting board and upon all future boards in the same district for a period of one, two or three years from the effective date of such policy but shall not prohibit the payment of salaries higher than those required by such policy or schedules nor the subsequent adoption of policies or schedules providing for higher salaries, increments or adjustments. Every school budget adopted, certified or approved by the board, the voters of the district, the board of school estimate, the governing body of the municipality or municipalities, or the commissioner, as the case may be, shall contain such amounts as may be necessary to fully implement such policy and schedules for that budget year.

The schedule adopted by the Board provides in relevant part:

| Middle Step | 1986–87 | 1987–88 | 1988–89 |
|---|---|---|---|
| J/K | $25,000 | $26,300 | $27,600 |
| K/L | $25,800 | $27,100 | $28,400 |
| L/M | $26,600 | $27,900 | $29,200 |

The salary guide reflects two types of incremental salary increases for each year. The employment increment is the increase awarded after the successful completion of each year of employment. With the addition of a year of experience a Haddonfield teacher moves one step vertically on the salary guide and receives an $800 employment increment. In addition, the salary guide reflects an adjustment increment secured through collective bargaining to off set an estimated rise in the cost of living for each year. (Originally, "employment increment" and "adjustment increment" were defined in *N.J.S.A.* 18A:29–6. That statute was repealed by the Teacher Quality

Employment Act, *L.* 1985, *c.* 321, § 16, of which Section 14 is a part. However, the original definitions remain relevant as Section 14 still refers to both terms.) Each year that a Haddonfield teacher moves horizontally across the schedule, she gains an additional $1,300. Thus, a successful teacher will enjoy a salary increase of $2,100 at the start of each school year—$800 for having added a year of experience and $1,300 to compensate for cost-of-living increases.

In the 1986–87 school year Probst received a salary of $25,-000, corresponding to Middle Step J/K on the Haddonfield salary schedule. Subsequently, the Board voted to withhold from Probst both her employment and adjustment increments for the next school year because of unsatisfactory performance. The Board acted pursuant to *N.J.S.A.* 18A:29–14, which provides in pertinent part that

> [a]ny board of education may withhold, for inefficiency or other good cause, the employment increment, or the adjustment increment, or both, of any member in any year by a recorded roll call majority vote of the full membership of the board of education.

> \* \* \* \* \* \* \* \*

> It shall not be mandatory upon the board of education to pay any such denied increment in any future year as an adjustment increment.

Because of the Board's decision, Probst's salary remained at $25,000 for the 1987–88 school year.

Probst's performance during that school year was satisfactory. As a result, the Board took no action to withhold further increments from her salary. Nor did the Board take action to restore her lost increments. Instead, Probst's salary was established by the Board at $27,100 for the 1988–89 school year. That amount represented a $2,100 increase from her previous salary and was based on an employment increment of $800 and an adjustment increment of $1,300. Although those increments were consistent with the compensation progression established in the Haddonfield salary schedule, $27,100 does not appear on the guide for the 1988–89 school year.

Probst does not challenge the initial withholding action by the Board. However, she does contest her $27,100 salary for the 1988–89 school year. Probst argues that Section 4.1 requires that all teachers who perform adequately must be paid an amount that appears on the school's salary schedule. Hence, absent a withholding by the Board for the 1988–89 school year, she must be compensated at a level that appears on the salary guide. Thus, Probst claims that she was entitled to receive $28,400 in 1988–89, the amount designated for middle-step K/L for that year on the salary schedule. That salary would have placed Probst one-half step behind teachers with her level of experience whose salary had not previously been withheld.

In response, the Board argues that Section 4.1 has nothing to do with the Legislature's authorization of local-board withholding actions with respect to poorly-performing teachers. According to the Board, Section 14 amounts to an exception to the mandate of Section 4.1. Once a board of education withholds a teacher's salary increment due to unsatisfactory performance, the denial is permanent for subsequent years until the board acts affirmatively to restore the withheld increments. The Board's withholding action derailed Probst from the salary guide. Hence, absent affirmative action by the Board to the contrary, Probst will remain "off-guide."

An Administrative Law Judge (ALJ) agreed with Probst and found that compensating her below the $28,400 set for middle-step K/L for the 1988–89 school year would amount to a withholding action without justification because she had performed satisfactorily the year before. Thus, the ALJ recommended that Probst be awarded $1,300, representing the difference between the $27,100 she had received for the 1987–88 school year and the $28,400 to which the ALJ found her entitled.

The Commissioner of Education (Commissioner) adopted the ALJ's findings. The State Board of Education (State Board) reversed the Commissioner. The State Board held that Probst did not have a statutory right to receive a salary appearing on

the adopted guide; because the Board had not granted petitioner the denied increments, she was entitled to only an $800 employment increment and a $1,300 adjustment increment for having successfully completed another year of employment. Thus, the State Board approved the salary that the Board had established for Probst.

The Appellate Division reversed and reinstated the Commissioner's decision. 249 *N.J.Super.* 222, 230, 592 *A.*2d 279 (1991). As a threshold matter, the court held that the State Board's interpretation of the statutes was not entitled to the deference ordinarily accorded state agencies because there was a split of opinion between the State Board and the Commissioner. *Id.* at 227, 592 *A.*2d 279. Finding the contested statutes to be ambiguous, the court read Sections 4.1 and 14 *in pari materia* and reasoned that returning Probst to the salary guide, albeit behind her counterparts, would best effectuate the intended purposes of both Section 4.1 and 14. *Id.* at 229, 592 *A.*2d 279.

According to the court, such a solution advances the purpose of Section 4.1 to have teachers paid in accordance with established salary guides. *Ibid.* In addition, the court found that restoring Probst to the schedule would not circumvent the authority granted to local boards by Section 14. The court reasoned that Probst would be adequately penalized for her poor performance because she would remain one step behind her contemporaries and that the 1987–88 adjustment increment of $1,300 would remain lost to her forever. *Ibid.* Finally, the court found that the State Board decision would subject Probst to a continuing $1,300 punishment without a finding of unsatisfactory work, contrary to Section 14. *Id.* at 230, 592 *A.*2d 279.

We granted certification, 127 *N.J.* 546, 606 *A.*2d 360 (1991), and now reverse.

## II.

■ Automatic restoration of previously-denied increments, as espoused by the Appellate Division, contradicts the legislative intent embodied in both sections.

Section 4.1 and Section 14 originated as separate statutes. Section 14 had its genesis in *L.* 1954, *c.* 249, which created the first minimum-salary schedule for public-school teachers. That legislation did not envision negotiated salary guides but set specific amounts for the employment increment. Section 4.1, by comparison, began as *L.* 1965, *c.* 236, a statute intended to prevent local boards from reneging on negotiated salary guides through manipulation of the budget process. However, both provisions were included in *L.* 1967, *c.* 271, an enactment that carried out a sweeping revision of New Jersey's education laws and created Title 18A.

That the two statutes were included in an enactment that repealed several other provisions as part of a general revision of the State education law indicates that the Legislature deliberately intended them to be components of a single statutory scheme. As such, the two sections were meant to complement one another. Thus, the statutes may be read *in pari materia* in order to harmonize the law relating to the same subject matter. *State v. Green,* 62 *N.J.* 547, 554–55, 303 *A.*2d 312 (1973). Certainly, the similarities in the sections do not represent the "adventitious occurrence of like or similar phrases, or even of similar subject matter, in laws enacted for wholly different ends[, which] will normally not justify" application of *in pari materia* as a tool in statutory construction. *See State v. DiCarlo,* 67 *N.J.* 321, 325, 338 *A.*2d 809 (1975).

An examination of the purposes of the two provisions unmistakably leads to the conclusion that the goal of promoting quality education is not furthered by diluting the strength of Section 14 through application of Section 4.1.

In *Newark Teachers Ass'n v. Board of Education,* 108 *N.J.Super.* 34, 259 *A.*2d 742 (Law Div.1969), *aff'd,* 57 *N.J.* 100, 270 *A.*2d 14 (1970), the legislative history of Section 4.1 was examined in the context of a union request to compel implementation of a salary schedule adopted by a board but not funded by the municipal body with ultimate financing authority. "Ap-

parently prior to [Section 4.1] it was not uncommon in the give-and-take of annual budget-making for boards of education to reduce salary schedules after their adoption by the board but before final approval" by governing bodies. *Id.* 108 *N.J.Super.* at 49, 259 *A.*2d 742. The court held that Section 4.1 was enacted to prevent "adopting and future boards * * * from reducing teachers' salary schedules in the budget-making process." *Ibid.* Section 4.1 therefore was designed to prevent local boards from using the budget process to avoid salary schedules they had already agreed to in collective-bargaining negotiations, thereby providing security to teachers who had negotiated multi-year salary schedules with school boards. There is little support for petitioner's position that the Legislature meant Section 4.1 to provide protection to teachers whose performance has been below expectations.

Section 14, however, clearly was meant to vest local boards with the ability to withhold increments from teachers who had not performed well during the previous year. First, the language of Section 14 is clear with respect to the restoration of teachers to adopted salary guides. That statute states that "[i]t shall not be mandatory upon the board of education to pay any such denied increment in any future year as an adjustment increment." *N.J.S.A.* 18A:29–14. The provision prohibits mandatory reimbursement of previously-withheld increments. Increment withholding is widely used to promote and maintain high standards of professionalism for public-school teachers. A withholding action focuses attention on a teacher's shortcomings, and the lasting economic effect of the decision provides an incentive for improving unsatisfactory performance. We have previously recognized the importance of school-board power in this regard.

In *Board of Education v. Bernards Township Education Ass'n*, 79 *N.J.* 311, 321, 399 *A.*2d 620 (1979), we held that the "purpose of [Section 14] is thus to reward only those who have contributed to the educational process thereby encouraging high standards of performance." Because salary increments

"can fairly be characterized as one of the most important considerations inducing a teacher to enter into the employment relationship[,]" we held that it would be "reasonable to assume that an adversely affected teacher will strive to eliminate the causes or bases of 'inefficiency' " in his or her performance that resulted in a withholding. *Ibid.* "The decision to withhold an increment is therefore a matter of essential managerial prerogative" in a Board's efforts to ensure a high-quality teaching staff for its students. *Ibid.* We emphasized that the decision to withhold salary increments for " 'inefficiency or other good cause' " are not terms and conditions of employment but rather matters pertaining to "the quality of the educational system," *ibid.*—matters properly determined by local boards of education.

In *North Plainfield Education Ass'n v. Board of Education,* 96 *N.J.* 587, 476 *A.*2d 1245 (1984), we noted the lasting effect of withholding actions on a teacher's future compensation. Although *North Plainfield* concerned a narrow statute-of-limitations issue, we recognized salary increments as "a reward for meritorious service," and observed that the Appellate Division had "misperc[eived] * * * the increment as a 'statutory entitlement unrelated to the teachers' qualifications, performance or quality of teaching services rendered.' " *Id.* at 593, 476 *A.*2d 1245 (quoting Appellate Division's unreported opinion). "Evaluation of that service is a management prerogative essential to the discharge of the duties of a school board. The determination of an annual increment after evaluation by a school board serves the dual statutory objectives of affording teachers economic security and of encouraging quality in performance." *Ibid.* (citation omitted). Finally, we noted that teachers who have been subject to a withholding "will always lag one step behind" their colleagues due to the "effect of an earlier employment decision." *Id.* at 595, 476 *A.*2d 1245.

In *Cordasco v. Board of Education,* 205 *N.J.Super.* 407, 410, 501 *A.*2d 171 (1985), the Appellate Division held that Section 14 explicitly prevented teachers from recovering withheld incre-

ments absent affirmative action by the local board. The court found that restoration of denied increments was statutorily delegated to the "favorable exercise of discretion by the local Board." *Id.* at 411, 501 *A.*2d 171. It rejected Cordasco's argument that the last sentence of Section 14 merely protects local boards from having to reimburse teachers for prior withholdings but did not control return of teachers to the otherwise-appropriate level of employment compensation. *Id.* at 410–11, 501 *A.*2d 171.

We conclude that no statute mandates that local boards return teachers to an adopted salary schedule following a withholding. Local boards, however, do have the discretion to do so on finding that restoration to a place on the schedule is warranted for a particular teacher. That discretion should be exercised when a teacher has recovered from the previously-recognized shortcoming and recaptured lost ground by steadily improving performance. The possibility of being returned to the schedule thus serves as an incentive to maintain improvements.

However, until such time as the local board determines that a teacher merits return to the salary schedule, a satisfactorily-performing teacher is entitled only to a yearly increase in salary. That increase should equal the annual salary progression reflected for that year in the schedule in place at the teacher's district. Thus, a teacher in these circumstances would receive an increase equal to the combined amount of the employment and adjustment increments contained in the appropriate salary guide. Because the local board in this case increased Probst's 1987–88 salary by $2,100, the amount of the combined annual increases reflected in the Haddonfield guide, she was properly compensated.

The Appellate Division's result eliminates a significant portion of the local board's discretionary power under Section 14. Under that court's reasoning, a local board's denial of an adjustment increment has little lasting effect because the with-

held funds will simply be given back the next year by way of mandatory on-guide placement. Thus, a significant incentive for teachers to maintain the quality of their performance in the years following a withholding is nullified. Such a reading of the statute does not promote the intent of the Legislature.

Our interpretation of the statutes is consistent with that of the State Board, which is entitled to substantial deference. *See Metromedia, Inc. v. Director, Div. of Taxation*, 97 *N.J.* 313, 327, 478 *A.*2d 742 (1984); *New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 561, 384 *A.*2d 795 (1978). The Appellate Division relied on the difference of opinion between the Commissioner and the State Board as grounds for affording the agency less deference than it would ordinarily be accorded. That determination was in error.

The Commissioner and the State Board do not share equal status as administrative decision makers. "The State Board has the general duty to supervise and control public education in New Jersey." *Parsippany–Troy Hills Educ. Ass'n v. Board of Educ.*, 188 *N.J.Super.* 161, 165, 457 *A.*2d 15 (App.Div.), *certif. denied*, 94 *N.J.* 527, 468 *A.*2d 182 (1983); *accord N.J.S.A.* 18A:4–10. To that end, the "ultimate administrative decision maker in school matters is the State Board." *In re Tenure Hearing of Tyler*, 236 *N.J.Super.* 478, 485, 566 *A.*2d 229 (App.Div.1989), *certif. denied*, 121 *N.J.* 615, 583 *A.*2d 315 (1990). In fact, any party aggrieved by a determination of the Commissioner may appeal as of right to the State Board, which may make its own findings of fact and conclusions of law. *N.J.S.A.* 18A:6–27; *Tyler, supra*, 236 *N.J.Super.* at 485, 566 *A.*2d 229. Thus, the State Board's interpretation of school laws is entitled to considerable weight, particularly where the determination is not inconsistent with the statute and promotes its purpose and intent. *Bassett v. Board of Educ.*, 223 *N.J.Super.* 136, 142–43, 538 *A.*2d 395 (App.Div.1988).

Finally, contrary to the holding of the court below, continued off-guide compensation does not amount to a continuing punish-

ment. In *North Plainfield, supra,* we held that "the fact that [a] teacher[ ] will always lag one step behind is not attributable to a new violation each year, but to the effect of an earlier employment decision." 96 *N.J.* at 595, 476 *A.2d* 1245.

## III.

Applying the broad and imperative language of Section 4.1 to teachers who have been adversely affected by a withholding would be inconsistent with the legislative desire to employ such management incentives in order to ensure high-quality teaching. Withholding actions permissibly result in lasting economic consequences. That lingering impact becomes an important incentive for improved performance because local boards retain the discretion to restore previously-withheld increments as rewards for continued improvement. Automatic restoration of previously-withheld increments for teachers who have improved their performance contradicts the Legislative intent embodied in both Section 4.1 and Section 14.

The judgment of the Appellate Division, therefore, is reversed and the salary calculated for Probst by the local board is reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.