**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1973-20

TRENTON EDUCATIONAL
SECRETARIES ASSOCIATION,

    Plaintiff-Appellant,

v.

TRENTON BOARD OF
EDUCATION,

    Defendant-Respondent.

_____

Argued January 11, 2022 – Decided February 11, 2022

Before Judges Messano, Accurso, and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. C-000003-21.

Steven R. Cohen argued the cause for appellant (Selikoff & Cohen, PA, attorneys; Steven R. Cohen, of counsel and on the brief; Hop T. Wechsler, on the brief).

Elesia L. James, Assistant General Counsel, argued the cause for respondent (James Rolle, Jr., General

Counsel, attorney; Elesia L. James, of counsel and on the brief).

PER CURIAM

Plaintiff Trenton Educational Secretaries Association (TESA) appeals from a February 24, 2021 order confirming an arbitration award in favor of defendant Trenton Board of Education (Board). We affirm.

As Judge Robert T. Lougy noted in the cogent written opinion accompanying his February 24 order, "TESA is the exclusive and sole representative for collective negotiations for regularly-employed secretarial employees" working for the Board. Between 1976 and 2012, the parties entered into a series of collective negotiations agreements (CNAs), and each CNA included a salary guide, requiring the Board to advance salary increments to eligible TESA members on July 1 of each year.[1]

Pertinent to this appeal, the parties entered into a three-year CNA (the Agreement) to cover the period between July 1, 2009 and June 30, 2012. Once

---

[1] A salary increment is composed of both an employment and an adjustment increment. See Probst v. Bd. of Educ. of Bor. of Haddonfield, 127 N.J. 518, 521 (1992). An employment increment is the salary increase awarded after the successful completion of each year of the employee's employment. Ibid. An adjustment increment is secured through collective negotiations to offset an estimated increase in the cost of living for each year. Ibid.

the Agreement expired, the parties were unable to reach a new agreement.[2] Nonetheless, on July 1, 2012, the Board advanced salary increments to eligible TESA members per the Agreement's salary guide. It did so again in years 2013, 2014 and 2015. But the Board discontinued this practice as of July 1, 2016. Accordingly, TESA filed a grievance in August 2016, claiming the Board violated the CNA by failing to advance TESA's active members on the salary guide for the 2016-2017 school year.

The grievance advanced to arbitration, where the parties stipulated the arbitrator would decide the following issue: "Did the Board violate the . . . Agreement by not moving TESA members on July 1, 2016 through the [salary] guide to the next step under an expired [a]greement? If so, what shall be the remedy?" During the October 2017 arbitration hearing, TESA argued that by withholding salary increments, the Board violated governing labor principles, as well as Article 9(A) of the Agreement, which stated "[a]ll employees in the unit shall be on their proper step and paid according to the salary guide as published in the appropriate schedule." TESA also contended the Board was

---

[2] The parties' submissions demonstrate they negotiated a successor agreement in 2018 which retroactively covered the period between July 1, 2012 and June 30, 2016, and provided: "The parties agree that movement on the salary guide will be determined by the arbitration decision rendered under Case Number: 01-16-0004-0650" — the decision challenged in the instant appeal.

3

bound by its long-standing practice of automatically advancing salary increments on July 1 of each year, even without a successor agreement.

On October 5, 2020, the arbitrator denied TESA's grievance and found the Board did not violate the Agreement. In support of her determination, the arbitrator relied, in part on Bd. of Educ. v. Neptune Twp. Educ. Ass'n, 144 N.J. 16 (1996), and on a decision by the Public Employment Relations Commission (PERC) applying it. In re E. Hanover Bd. of Educ., P.E.R.C. No. 99-71, 25 N.J. P.E.R. ¶ 30052, 1999 N.J. PERC LEXIS 12 (1999).

By way of brief background, in Neptune, the Court confronted the issue of whether the labor law concept of "dynamic status quo"[3] applied to teachers, thereby requiring continuation of annual salary increments under an expired agreement. The Court found teachers could not be paid such increments after the expiration of their CNAs because the practice was barred under N.J.S.A. 18A:29-4.1, 144 N.J. at 29, and because no recoupment could be obtained from a tenured public employee, id. at 33-34. Subsequently, in E. Hanover Bd. of Educ., a decision we affirmed in an unpublished decision, PERC extended

_____

[3] As the Court explained in Matter of Cnty. of Atl., 230 N.J. 237, 247 (2017), this doctrine was "adopted by PERC in 1975, when it upheld 'the generally accepted view . . . that an employer is normally precluded from altering the status quo while engaged in collective negotiations'" (quoting In re Piscataway Twp. Bd. of Educ., P.E.R.C. No. 91, 1975 N.J. PERC LEXIS 23 at 6 (1975)).

Neptune's holding, finding the prohibition against paying increments under an expired contract applied to nonteachers who were in a mixed bargaining unit with teachers.  E. Hanover Bd. of Educ., P.E.R.C. No. 99-71, 25 N.J. P.E.R. ¶ 30052, 1999 N.J. PERC LEXIS 12 (1999).

Acknowledging that TESA's members, like the teachers in Neptune, were tenured, the arbitrator concluded:

> Though [TESA] correctly pointed out that Neptune applies only to teaching staff members and not to secretaries, as in this unit, a subsequent decision in East Hanover Board of Education (1999), P.E.R.C. No. 99-71, expanded the prohibition against increments. . . . and extended it to all three-year contracts involving employees in a mixed unit with teaching staff members. Therefore, it must be concluded that in accordance with East Hanover, the Board is not required to advance these secretaries along the salary guide before a new contract is reached.
>
> [(Emphasis added).]

The arbitrator reasoned that once a new agreement was reached, "[t]his Board would not be permitted to recoup any salary increases from these tenured secretaries if they were above the final dollar amounts agreed upon because under New Jersey's tenure laws, the salary of these tenured secretaries cannot be reduced" "unless tenure charges are sustained."  Further, the arbitrator observed that although "there had been an established past practice that the

A-1973-20

Board would continue to pay salary increases during the period of time after the expiration of the Agreement and until the signing of the new contract," the Board was not in violation of the Agreement because: "[f]irst, there was no specific language requiring the Board to increase the secretaries along the guide, and second[], . . . the Board . . . , as a public entity, . . . has a fiscal responsibility to manage its budget for the public good."

Additionally, in response to TESA's claim that the decision in Matter of County of Atlantic supported the notion that salary increments could be advanced to TESA's members, the arbitrator found the facts here distinguishable in two respects. She observed that the police officers referenced in Atlantic did not attain tenure, so their salaries could be reduced once new salary guides were established. Moreover, the arbitrator determined another "important difference is that unlike the language in this Agreement, the contract in Atlantic had specific language requiring the County to continue paying increments until a new contract is agreed upon." She reiterated, "No such language appears in this Agreement."

In December 2020, TESA filed an order to show cause and a verified complaint, seeking to vacate the arbitration award. It argued the arbitrator's award was "based on a mistake of fact, namely, that TESA was a mixed unit

A-1973-20

composed of both secretaries and certificated teaching staff members," and this alleged mistake of fact led her to erroneously conclude the Board did not violate the Agreement. The Board filed a counterclaim, asking the court to confirm the award.

After hearing argument from counsel, Judge Lougy issued his February 24 opinion, denying TESA's application and confirming the arbitration award. The judge noted the arbitrator found in favor of the Board

> based on the evidence provided, that there was an absence of contractual language which would require the Board to continue paying increments following the expiration of the [Agreement]; that tenure laws effectively preempted labor law and the Board would not be permitted to reduce the tenured secretaries' compensation unless tenure charges were sustained; and that the Board, as a public entity, has a fiscal responsibility to appropriately manage its budget for the public good.

Regarding TESA's claim that the arbitrator made a mistake of fact in believing TESA was a mixed bargaining unit, the judge observed:

> TESA parses the [arbitration a]ward's text too finely. The [a]rbitrator acknowledged that TESA was not a mixed unit but, given the tenure laws, concluded that the East Hanover rationale applied equally to it. . . . Throughout the award . . . the [a]rbitrator referred to the relevant employees as "secretaries" . . . [and n]othing in the [a]ward suggests that the [a]rbitrator was not entirely cognizant of the makeup of the bargaining unit.

7

Thus, the judge determined the arbitrator's interpretation of the Agreement was "reasonably debatable" and there was no basis to vacate the award.

On appeal, TESA again contends the award was procured by "undue means," and "based on the mistake of fact that TESA was a mixed negotiations unit composed of both secretaries and teaching staff members, which led [the arbitrator] to misapply the law by determining that TESA's grievance was governed by tenure law and not labor law." TESA also argues the judge and arbitrator misunderstood labor law and "erroneously concluded that the parties' [forty]-year, binding past practice of paying salary increments on an expired contract was irrelevant and that express contract language requiring the payment of increments was necessary to create an enforceable right." Finally, TESA contends the judge erred by finding the arbitrator's "interpretation of the agreement was reasonably debatable[.]" These arguments are unavailing.

We review "the denial of a motion to vacate an arbitration award de novo," Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010) (citing Del Piano v. Merrill Lynch, Pierce, Fenner & Smith Inc., 372 N.J. Super. 503, 507 (App. Div. 2004)), aware that "arbitration awards are given a wide berth, with limited bases for a court's interference," Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201 (2013). Therefore, "the party

seeking to vacate [an award] bears a heavy burden." Del Piano, 372 N.J. Super. at 510. Further, in the context of public-sector labor disputes, arbitration "should be a fast and inexpensive way to achieve final resolution of such disputes and not merely 'a way-station on route to the courthouse.'" Borough of E. Rutherford, 213 N.J. at 201 (quoting PBA Loc. 11 v. City of Trenton, 205 N.J. 422, 429 (2011)).

Under the New Jersey Arbitration Act, N.J.S.A. 2A:24-8, there are four statutory bases for vacating an award, namely:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, . . . or in refusing to hear evidence, . . . or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> [See also Borough of E. Rutherford, 213 N.J. at 202.]

"Undue means," as referenced under N.J.S.A. 2A:24-8(a), involves a "situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record." Office of Emp. Rels.

v. Commc'ns Workers of Am., 154 N.J. 98, 111-12 (1998). But a court "must consider more than whether a mere mistake occurred." Minkowitz v. Israeli, 433 N.J. Super. 111, 150 (App. Div. 2013). "[T]he error, to be fatal, must result in a failure of intent or be so gross as to suggest fraud or misconduct." Id. at 150-51 (internal quotation marks and citations omitted).

Vacatur also is warranted under N.J.S.A. 2A:24-8(d) "[w]here the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." Further, "a court 'may vacate an award if it is contrary to existing law or public policy.'" Borough of E. Rutherford, 213 N.J. at 202 (quoting Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007)).

An arbitrator exceeds his or her authority by ignoring "the clear and unambiguous language of the agreement." City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist., 311 N.J. Super. 300, 312 (App. Div. 1998). But a reviewing court is "duty-bound" to enforce an arbitrator's interpretation of a contract, "[s]o long as the arbitrator's interpretation of the contractual language is 'reasonably debatable,'" N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 548 (2006) (citing Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)), meaning "if two or more

interpretations of a labor agreement could be plausibly argued, the outcome is at least reasonably debatable." Borough of Carteret v. Firefighters Mut. Benevolent Ass'n, Loc. 67, 247 N.J. 202, 212 (2021). "[W]here a collective bargaining agreement provides for binding arbitration, 'it is the arbitrator's construction that is bargained for,' and not a court's construction." PBA Loc. 11 v. City of Trenton, 205 N.J. at 429 (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). We are satisfied Judge Lougy understood these principles when he found the arbitrator's interpretation of the Agreement and the conclusion flowing therefrom was "reasonably debatable."

Importantly, TESA concedes it cannot prevail on its "undue means" argument unless we agree with the Association's contention the arbitrator made a mistake of fact by incorrectly believing TESA was a mixed bargaining unit, rather than one composed exclusively of secretaries. In short, we are not convinced the arbitrator made such a mistake. Instead, we concur with Judge Lougy's assessment that the arbitrator was "entirely cognizant of the makeup of the bargaining unit" when she concluded the Board's decision not to "advance the secretaries along the salary guide on July 1, 2016" was proper. Demonstrating her understanding of the composition of the bargaining unit, the arbitrator also found "the secretaries are all tenured employees and as tenured

employees, the Board is not permitted to reduce their compensation unless tenure charges are sustained." She added, "[i]f the salary increases were granted and if subsequent negotiations resulted in lower salaries, those salary increases could not be recouped by the Board." As Judge Lougy found, and we agree, "[t]hroughout [her] award, . . . . the [a]rbitrator referred to the relevant employees as 'secretaries.'" Thus, we decline to conclude the award was based on a mistake of fact or that Judge Lougy should have found the award was procured by undue means.

Next, TESA contends the judge and the arbitrator erroneously found the Board's long-standing practice of paying salary increments on an expired contract was irrelevant and that "express contract language requiring the payment of increments was necessary to create an enforceable right." Because we do not find the arbitrator's award was based on a mistake of fact about the makeup of the negotiating unit, we are precluded from considering TESA's claim that the mistake led the arbitrator to reject application of the dynamic status quo doctrine despite the Board's past practice of paying salary increments on an expired contract.

Lastly, we are not persuaded the judge erred in confirming the award after finding the arbitrator's interpretation of the agreement was "reasonably

debatable." While courts uniformly discourage an arbitrator from altering or "contradict[ing] the express language" of a collective bargaining agreement, Loc. No. 153, Office & Prof'l Emps. Int'l Union v. Trust Co. of N.J., 105 N.J. 442, 452 (1987), they do delegate arbitrators with the power to "fill in . . . gap[s] and give meaning to [vague] term[s,]" Linden, 202 N.J. at 277. That is because "[i]t is the arbitrator's construction that is bargained for in the collective bargaining process." Loc. No. 153, 105 N.J. at 452. Thus, considering the Agreement here contained no express terms compelling the Board to continue advancing salary increments upon the Agreement's expiration, we see no reason to disturb Judge Lougy's finding that the arbitrator's interpretation of the Agreement, i.e., the Board did not violate the Agreement "by not automatically advancing TESA members on July 1, 2016 through the salary guide to the next step under an expired Agreement," was "reasonably debatable."

In sum, we are not persuaded the arbitration award was procured by undue means, N.J.S.A. 2A:24-8(a), or grounded upon the arbitrator's "mistake of fact," nor are we convinced the arbitrator exceeded or imperfectly executed her power, N.J.S.A. 2A:24-8(d). Thus, we do not reach the issue of whether the judge and arbitrator "misconstrued a fundamental concept of labor law" relative to the dynamic status quo doctrine and the Board's past practice of paying salary

13

increments. But having reviewed the record, we are satisfied the judge did not err in finding the arbitrator's interpretation of the Agreement was reasonably debatable.

To the extent we have not addressed any remaining arguments advanced by TESA, we are satisfied they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1973-20