**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0052-18T3

CECILIA MULLANAPHY,

      Petitioner-Appellant,

v.

BOARD OF EDUCATION
OF THE TOWNSHIP OF
MARLBORO, MONMOUTH
COUNTY,

      Respondent-Respondent.

_____

Argued telephonically October 16, 2019 -
Decided November 6, 2019

Before Judges Vernoia and Susswein.

On appeal from the New Jersey Commissioner of Education, Docket No. 187-7/16.

Stephen B. Hunter argued the cause for appellant (Detzky, Hunter & Defillippo, LLC, attorneys; Stephen B. Hunter, of counsel and on the brief).

Marc H. Zitomer argued the cause for respondent Board of Education of the Township of Marlboro (Schenck, Price, Smith & King, LLP, attorneys; Marc H. Zitomer

and Sandra Calvert Nathans, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Donna Arons, Assistant Attorney General, of counsel; James M. Esposito, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner Cecilia Mullanaphy, a school nurse employed by the Marlboro Township Board of Education (Board), appeals from a Commissioner of Education final decision upholding the Board's withholding of petitioner's salary increment for the 2015-2016 school year. Having reviewed the record in light of the applicable law, we are convinced the Commissioner's decision is supported by substantial credible evidence and is not arbitrary, capricious, or unreasonable, and we affirm.

I.

In May 2015, the Board voted to withhold petitioner's salary and adjustment increment for the 2015-2016 school year based on its determination petitioner did not adequately investigate the circumstances surrounding a February 4, 2015 incident during which a fifth-grade student fainted, did not properly report the incident to the student's parents, and failed to follow the applicable guidelines for the assessment and treatment of a fainting student.

Two months later, petitioner filed a petition with the Commissioner of Education (Commissioner) seeking rescission of the Board's decision, alleging it was arbitrary, capricious, and unreasonable and unsupported by the evidence.[1] The Commissioner transmitted the matter to the Office of Administrative Law, where a hearing was held before an administrative law judge (ALJ).

The evidence at the hearing showed petitioner is a certified school nurse who has been employed by the Board since the 1994-1995 school year. During the 2014-2015 school year, petitioner served as the school nurse at an elementary school.

On February 4, 2015, the school held a choral concert in its cafetorium during which over one hundred fifth-grade students, all standing on bleachers, performed. One of the students standing on the back row of the bleachers felt light-headed and fainted. The student was helped from the bleachers to the floor by two teachers. The student was given water and seated in a chair. Philip

---

[1] Initially, petitioner's collective negotiations representative, the Marlboro Township Education Association (Association), filed a grievance alleging the Board disciplined petitioner without just cause and requesting reinstatement of the increment. Following the denial of the grievance, the Association sought the appointment of an arbitrator, and the Board filed a scope of negotiations petition with the New Jersey Public Employment Relations Commission (PERC). PERC granted the Board's request to restrain the arbitration and determined the dispute should be resolved by the Commissioner. Petitioner then filed the petition that is the subject of the pending appeal.

Lozada, a teacher who is also a certified emergency medical technician, hurried over to assist the student. He took the student's pulse and assessed her breathing, which he reported as normal.

Petitioner was called to the cafetorium, and, when she arrived, Lozada informed her the student had been standing in the bleachers for approximately one hour and may have fainted but was recovering. Petitioner spoke to the student and determined emergency services were not required and that the student could walk to the nurse's office. After petitioner and the student arrived at the nurse's office, petitioner had the student drink water and sit on a cot with her legs elevated. After observing the student for twenty to thirty minutes, petitioner allowed the student to leave the nurse's office and return to her class unsupervised.

Petitioner called the student's mother but did not inform her that the student either fainted or may have lost consciousness. The mother later called back and asked to speak with her daughter. Petitioner brought the student back to the nurse's office, where she spoke to her mother on the phone and then returned to class. Later that day, petitioner went home sick and was out of work for the next two days.

A-0052-18T3

The following day, February 5, 2015, the student's mother sent petitioner an email expressing concerns about petitioner's handling of the incident. The student's mother described that petitioner made the incident seem "very minor" during their phone call the prior day and that it was not until the mother received text messages from parents of other students that she first learned her daughter had fainted. The student's mother questioned why petitioner provided "very little details" and wondered how long her daughter had been unconscious, whether her daughter had hit any part of her body, and whether her daughter's blood pressure or pulse measurements were taken. Finally, the mother questioned why a child who fainted had not been examined by a doctor.

Petitioner responded to the email on February 6, explaining her actions. She described being called to the cafetorium and finding the student "alert, responsive, pale, clammy and sitting in a chair with a water bottle." She also stated that to her knowledge the student had not fainted. She explained the student was able to walk to the nurse's office without assistance and that after a few minutes "her color returned, she interacted with another student . . . [s]he rested for [thirty] minutes and felt fine to go back to class . . . ." Petitioner assured the student's mother that it is not uncommon for students standing under hot lights to "get light-headed, dizzy, and sometimes faint." Petitioner

5

apologized for being absent from school and unavailable to answer the mother's questions, but assured her that "had this been a medical emergency, 911 would have been called."

Eric M. Hibbs, Ed.D., is the Superintendent of Schools in Marlboro. He was not present at the concert, but was informed about the incident. The school principal and the student's mother both contacted Dr. Hibbs. Dr. Hibbs met with the student's mother, who was "furious" and felt that petitioner endangered her daughter's health by failing to call emergency services after her daughter fainted and failed to accurately communicate the seriousness of the incident. Dr. Hibbs conducted an investigation of the incident.

During his investigation, Dr. Hibbs: (1) obtained statements from all of the staff members who witnessed the incident; (2) met with the head of human resources for the school district, Craig Vaughn; (3) reviewed video of the incident in the cafetorium; (4) met with petitioner; (5) reviewed the nursing manual and discussed it with nursing supervisor, Linda Attanasio; and (6) spoke to school physician Dr. Mary Yee.

Separate statements obtained from three teachers present when the incident occurred indicated that the student fainted. One teacher reported seeing the student "passing out," and described how the student's "eyes were closed and

A-0052-18T3

she was unresponsive for about [fifteen] seconds." Another teacher reported the student "suddenly collapsed into the backing of the top row" of the risers, and "was not getting back up and seemed to be passed out." Finally, Lozada reported he informed petitioner he "suspected that the [student] might have fainted" when petitioner first arrived at the cafetorium.

Dr. Hibbs testified that he generally agreed with the student's mother that petitioner performed ineptly during this incident. Specifically, Dr. Hibbs concluded: (1) the incident should have been treated as an emergency because the student had lost consciousness and did not merely feel faint; (2) emergency services should have been called; (3) school nursing protocols were not followed, even if he accepted petitioner's "mischaracterization" of the event as non-urgent, because the student was not placed in a supine position, she was not given a cold compress, her clothes were not loosened, and her vital signs were not monitored; (4) the student should not have been allowed to walk back to class unattended; and (5) petitioner's explanation to the student's mother was inaccurate and incomplete.

Dr. Hibbs had instructed petitioner to prepare a report providing a formal description of the incident beyond the details included in petitioner's nursing notes. Dr. Hibbs provided a copy of the report to the student's mother, who

7

expressed concern that petitioner did not mention her daughter's loss of consciousness.

Dr. Hibbs met with the human resources director, Vaughn, and decided, as a result of the incident, to recommend that the Board withhold petitioner's salary increment for the following school year. The Board unanimously supported the recommendation and voted to withhold the increment. Dr. Hibbs testified he made his recommendation because: (1) petitioner's nursing notes did not accurately indicate what actually occurred; (2) petitioner did not adequately investigate what occurred; (3) petitioner misinformed the student's mother about the student's fainting; and (4) petitioner did not follow nursing protocols for students that faint. Following the Board's decision to withhold the increment, Dr. Hibbs provided petitioner with a letter detailing the reasons for the decision and explaining the basis for his recommendation to the Board.

At the hearing before the ALJ, petitioner testified that when she arrived at the cafetorium following the incident, Lozada said the student had felt faint and had been placed in the chair. Petitioner explained that she assessed the student and determined she was alert and responsive. Petitioner acknowledged determining the student had a fainting incident. Petitioner also testified the student was treated in accordance with the school district's published protocols,

and that the student had recovered sufficiently after thirty minutes of observations to return to class. According to petitioner, the incident constituted a non-emergent matter that resulted solely from the student's reaction to standing lock-kneed in the warm cafetorium for approximately one hour. Petitioner testified she complied with the district's protocols and guidelines for non-urgent incidents, including by telephoning the student's mother and informing her what occurred. She further explained she did not violate a protocol requiring the monitoring of a student's vital signs following a fainting incident because the protocol applied only on an "as needed basis" and there was no need to check the student's vital signs under the circumstances presented.

The ALJ found the student "briefly fainted" during the incident, was given water, and was required to place her head in a downward position. The ALJ further found the student's vital signs were found to be normal by Lozada, an emergency medical technician. The ALJ also determined that upon petitioner's arrival in the cafetorium, she evaluated the student and determined "the situation was not urgent." The ALJ found the student suffered from heat exhaustion and dehydration, and petitioner observed the student for thirty minutes before allowing her to return to class. The ALJ concluded the district protocols are guidelines and care is properly based on clinical presentation. The ALJ further

determined that petitioner contacted the student's mother and "generally described that [the student] had become dizzy . . . and was brought to the nurse's office, where she fully recovered."

In her assessment of the Board's decision to withhold the increment, the ALJ quoted from, and apparently relied on, the statutory standard applicable to the dismissal or reduction in salary of a tenured teacher.  See N.J.S.A. 18A:6-10.  The ALJ also suggested the district's recommended guidelines for the treatment of an unconscious student were inapplicable because the student "had already begun to recover when [petitioner] first observed her."  The ALJ rejected Dr. Hibb's determination that petitioner inaccurately described the incident to the student's mother, finding petitioner's failure to inform the mother that her daughter fainted was not "false, or misleading" because "as this was not an emergency there was no reason to alarm the parent."  The ALJ ordered that petitioner's increment for the 2015-2016 school year be reinstated.

The Board filed exceptions to the ALJ's decision and recommendation. The Board argued the ALJ applied an incorrect and heightened standard under N.J.S.A. 18A:6-10 and improperly substituted her judgment for the Board's. The Commissioner agreed, finding the ALJ erred by relying on the standard applicable to a school board's decision reducing the compensation of, or

dismissing, a tenured teacher. See N.J.S.A. 18A:6-10. The Commissioner explained that under N.J.S.A. 18A:6-10, a board of education bears the burden of supporting a revocation of tenure. The Commissioner noted that in contrast, under N.J.S.A. 18A:29-14 a school employee challenging the withholding of an increment has the burden of establishing the decision is arbitrary, capricious, lacks a rational basis, or is the product of improper motives.

The Commissioner noted that in Kopera v. Board of Education of West Orange, we stated that the determination of whether the withholding of an increment is reasonable requires consideration of whether the facts supporting a board of education's decision are as the board claims them to be, and whether it was unreasonable for the board of education to conclude as it did based on the facts presented. 60 N.J. Super. 288, 296-97 (App. Div. 1960).

The Commissioner determined the standard applicable to the assessment of the Board's decision is set forth in N.J.S.A. 18A:29-14, entitled "Withholding increments; causes; notice of appeals," which provides:

> [a]ny board of education may withhold, for inefficiency or other good cause, the employment increment, or the adjusted increment, or both, of any member in any year by a recorded roll call majority vote of the full membership of the board of education.

A-0052-18T3

The Commissioner further noted that in <u>Kopera</u>, we held that the scope of review of a board of education's decision to withhold an increment is "not to substitute his [or her] judgment for that of those who made the evaluation but to determine whether they had a reasonable basis for their conclusions." 60 N.J. Super. at 296.

The Commissioner determined the ALJ erred by finding the district's protocols constituted only guidelines, explaining the Standing Operating Procedures for School Nurses includes mandatory requirements for the treatment of a student who faints that were ignored by petitioner.[2] The Commissioner therefore determined the Board appropriately found petitioner was derelict in the performance of her duties. The Commissioner further found the Board had a rational basis for withholding petitioner's increment because she failed to follow the required protocols for treatment of a student who faints, failed to properly investigate whether the student lost consciousness, and failed to provide "complete and accurate information to [the student's] parents."

---

[2] As noted by the Commissioner, the Standard Operating Procedures for School Nurses requires a nurse must apply a cold compress to the head of a student who faints, loosen the student's clothes, monitor the student's vital signs, assess the student's breathing and pulse, activate the medical emergency response team, review the student's health history with the student's parents, and inform the student's parents the student fainted.

A-0052-18T3

The Commissioner concluded that the Board's decision is supported by evidence establishing petitioner's poor performance in the handling of the fainting incident, and that petitioner failed to demonstrate the Board's decision was arbitrary, capricious, unreasonable, or the result of any improper motives. The Commissioner rejected the ALJ's recommendation and affirmed the Board's decision withholding petitioner's increment for the 2015-2016 school year. This appeal followed.

## II.

Our review of the Commissioner's decision is limited. A final decision of an administrative agency should not be disturbed unless it is arbitrary, capricious, or unreasonable. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). An appellate court should undertake a "careful and principled consideration of the agency record and findings." Riverside Gen. Hosp. v. N.J. Hosp. Rate Setting Comm'n, 98 N.J. 458, 468 (1985). The findings of the administrative agency should be affirmed if they "'could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole' . . . with due regard also to the agency's expertise." Close v. Kordulak Bros., 44 N.J. 589, 599 (1965) (quoting State v. Johnson, 42 N.J. 146, 162 (1964) (internal quotations omitted)). We "intervene only in those rare circumstances

A-0052-18T3

in which an agency action is clearly inconsistent with its statutory mission or with other State policy." Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995).

To reverse an agency's judgment, we "must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [ ] not supported by substantial credible evidence in the record as a whole.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980)). Our Supreme Court has explained that

> [a]ppellate review of an agency's determination is limited in scope . . . . Without a "clear showing" that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record, an administrative agency's final quasi-judicial decision should be sustained, regardless of whether a reviewing court would have reached a different conclusion in the first instance.
>
> [Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9-10 (2009) (citing In re Herrmann, 192 N.J. 19, 27-28 (2007))].

Measured against these standards, we find no basis to reverse the Commissioner's decision. N.J.S.A. 18A:29-14 authorized the Board to withhold petitioner's increment "for inefficiency or other good cause," and "[t]he decision to withhold an increment is . . . a matter of essential managerial prerogative which has been delegated by the Legislature to the Board." Bd. of Educ. v. Bernards Twp. Educ. Ass'n, 79 N.J. 311, 321 (1979).

A-0052-18T3

Generally, salary increments are "in the nature of a reward for meritorious service to the school district," rather than being "statutory entitlement[s]." North Plainfield Educ. Ass'n v. Bd. of Educ., 96 N.J. 587, 593 (1984). Indeed, N.J.S.A. 18A:29-14 was "clearly . . . meant to vest local boards with the ability to withhold increments from teachers who had not performed well during the previous year." Probst v. Bd. of Educ., 127 N.J. 518, 526 (1992). A board's exercise of this discretionary power "may not be upset unless patently arbitrary, without rational basis or induced by improper motives." Parsippany-Troy Hills Educ. Ass'n v. Bd. of Educ., 188 N.J. Super. 161, 167 (App. Div. 1983) (quoting Kopera, 60 N.J. Super. at 294).

Petitioner argues the Board's decision withholding her increment was impermissibly "arbitrary and capricious." She claims the "underlying facts" relied on by the Board and Commissioner are "unsupported and unsupportable." Her claim is founded on her version of the facts and her interpretation of the evidence. She contends the Board and Commissioner erred by relying on Dr. Hibbs' version of the events and his interpretation of the medical care guidelines and other evidence.

We are not persuaded by petitioner's arguments. The Commissioner's detailed findings of fact are amply supported by the evidence presented during

15

the hearing, and the Commissioner correctly determined petitioner failed to demonstrate the Board's decision is arbitrary, capricious, or unreasonable. The evidence the Commissioner found credible established that petitioner did not comply with the guidelines for treatment of a student who has fainted, did not investigate the circumstances surrounding the fainting incident, and failed to inform the student's mother that the student fainted.

Petitioner argues the guidelines are not mandatory, and, for that reason, the Board's reliance on her departure from the guidelines renders the Board's decision arbitrary, capricious, or unreasonable. We disagree because, as noted by the Commissioner, even if petitioner is correct that the guidelines are not mandatory, it was not arbitrary, capricious, or unreasonable for the Board to consider petitioner's departure from the guidelines in its assessment of the performance of petitioner's job duties. Moreover, the Board's decision was not founded solely on petitioner's departure from the guidelines. Rather, the Board also considered petitioner's failure to conduct any investigation concerning the student's fainting, her failure to detail in her notes and report that the student

16

fainted, and her inexplicable failure to inform the student's mother that the child fainted when petitioner called the mother to report what occurred.[3]

The Commissioner also did not err by relying on Dr. Hibbs' testimony. Petitioner argues Dr. Hibbs is not a medical expert and it was error to rely on what petitioner characterizes as Dr. Hibbs' medical testimony. Petitioner ignores that Dr. Hibbs did not testify as a medical expert, and he did not offer medical testimony. To the contrary, he testified about his investigation, published school district guidelines and protocols, petitioner's actions and inaction, and the reasons supporting the Board's decision to withhold petitioner's increment. Dr. Hibbs was competent to testify in each of those areas, and, in all respects, the Commissioner found his testimony credible. That testimony, combined with the other evidence the Commissioner found credible, supports the Commissioner's factual findings and legal conclusion that petitioner failed to satisfy her burden of establishing the Board's decision was arbitrary,

---

[3] The ALJ found as a matter of fact that petitioner did not inform the student's mother that the child fainted because petitioner did not want to alarm the mother. That finding requires the conclusion that petitioner made a conscious decision to withhold the fact that the student fainted from the student's mother. The record supports that finding, which buttresses the Commissioner's conclusion that the Board's decision was not arbitrary, capricious, or unreasonable.

capricious, or unreasonable. We therefore discern no basis to reverse the Commissioner's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0052-18T3