188 N.J. Super. 161 (1983)
457 A.2d 15
PARSIPPANY-TROY HILLS EDUCATION ASSOCIATION, APPELLANT
v.
BOARD OF EDUCATION OF THE TOWNSHIP OF PARSIPPANY-TROY HILLS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 21, 1982.
Decided February 1, 1983.
*163 Before Judges MATTHEWS, ANTELL and FRANCIS.
Cassel R. Ruhlman, Jr. argued the cause for appellant (Ruhlman & Butrym, attorneys; Richard A. Friedman and Cassel R. Ruhlman, Jr. on the brief).
Myles C. Morrison, III, argued the cause for respondent (Dillon, Bitar & Luther, attorneys; Henry N. Luther, III of counsel; Myles C. Morrison, III on the brief).
Alfred E. Ramey, Jr., Deputy Attorney General of New Jersey, argued the cause for State Board of Education (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
High school sophomores in the Parsippany-Troy Hills School District are required to attend for credit five weeks of classroom instruction in driver education. Behind-the-wheel training is offered after school, evenings and weekends by the Adult Evening School for a $105 fee. The Education Association appeals from the State Board of Education's reversal of the administrative law judge's decision. The Association contends that driver education is an essential part of a constitutionally-mandated thorough and efficient education and that the program may not be bifurcated with the behind-the-wheel portion offered on a fee basis by the Adult Evening School.
We are being asked to decide the degree of control a local board of education has over a driver education program in its *164 high school. Does the Thorough and Efficient Clause (T & E) of the State Constitution require the board to offer driver education? If not, but the board chooses to require all students to take a classroom driver education program, does the T & E Clause mandate that the board also provide behind-the-wheel training? If not, may the board choose to provide behind-the-wheel training under the auspices of its Adult Education School for $105, taught either after school and on Saturdays by state-"certified" teachers or in the evening by a professional driving school?
The administrative law judge summarized his conclusions as follows:
1. The Board's failure to provide behind-the-wheel instruction in driver education in the regular school curriculum does not constitute a denial of a thorough and efficient education;
2. The classroom instruction in driver education is an integral part of the health program, which is an integral part of the required physical education program, which is an integral part of the school curriculum;
3. Behind-the-wheel training is an integral part of the driver education program;
4. The Board may bifurcate behind-the-wheel training from its curricular offerings incorporated in the regular school day, assuming proper supervision and the use of certified teachers, and
5. The Board may not charge a tuition fee for pupils participating in the behind-the-wheel training program.
Issues presented in this appeal by the Association exactly parallel these summary conclusions.
On review, the State Commissioner of Education set aside the administrative law judge's decision and awarded summary judgment for the Board. He agreed that a thorough and efficient education does not necessarily include any driver education program and that driver education may be offered outside of regular school hours. The Commissioner also found that the Evening Adult School could offer behind-the-wheel instruction as a general community service available on a fee basis to anyone desiring the program. The only limitations on such a program are that no regular school credit or record of participation must be on a public school student's transcript, and the *165 course must be offered exclusively during those hours in which the adult school is normally in session. The Commissioner's decision is based exclusively on his previous decision in Ann Camp v. Board of Education of the Borough of Glen Rock, Bergen County, 1977 S.L.D. 706 and on N.J.S.A. 18A:11-1 and N.J.A.C. 6:8-3.5 which gives the Board power to determine and adopt the educational program for each school. The Commissioner did not agree or disagree with the administrative law judge's determination that behind-the-wheel training is an integral part of driver's education, nor did he discuss the relevance of that determination. The State Board of Education summarily affirmed the Commissioner's decision "for the reasons expressed therein" and provided no additional support or analysis.
Plaintiffs maintain that this court is not bound by the State Board's determination of the legal issues. Where the issue is one of law, the Commissioner's and State Board's decision do not carry a presumption of validity and it is for this court to decide whether those decisions are in accord with the law. Biancardi v. Waldwick Bd. of Ed., 139 N.J. Super. 175, 177 (App.Div. 1976), aff'd for reasons below 73 N.J. 37 (1977). "An appellate tribunal is ... in no way bound by the agency's determination of a strictly legal issue." Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973).
However, a review of the statutory and code provisions concerning the delegation and distribution of control over educational issues among the State Board, the Commissioner and the local boards reveals that determination of curriculum is actually a discretionary decision of these administrative bodies. The State Board has the general duty to supervise and control public education in New Jersey. N.J.S.A. 18A:4-10. This includes the duty to make and enforce rules for carrying out the state school laws. N.J.S.A. 18A:4-15.
The Commissioner is the secretary of the State Board, N.J.S.A. 18A:4-9, and the chief officer of the State Department of Education, N.J.S.A. 18A:4-22. The Legislature has delegated to him the duty to "inquire into and ascertain the thoroughness *166 and efficiency of operation of any of the schools...." N.J.S.A. 18A:4-24. See, also, In re Upper Freehold Reg'l School Dist., 86 N.J. 265, 273 (1981), Robinson v. Cahill, 62 N.J. 473, 509, n. 9 (1973). Thus, the Commissioner's interpretation of what is required under "thorough and efficient" should be accorded certain deference. The Commissioner has also been delegated power to prescribe minimum courses of study for the public schools. N.J.S.A. 18A:4-25. This section has been used by the courts to allow the Commissioner to correct racial imbalance, Jenkins v. Morris Tp. Dist., 58 N.J. 483 (1971), and to administer statewide achievement tests, Chappell v. Comm'r of Education of N.J., 135 N.J. Super. 565 (App.Div. 1975).
The local school boards have the duty to enforce rules promulgated by the State Board. N.J.S.A. 18A:11-1. They have also been granted broad discretion over their curriculum choices by the Legislature.
The "Legislative Finding" prefacing the Public School Education Act of 1975, N.J.S.A. 18A:7A-1 et seq. (1975 act) established that curriculum is essentially a local question, decisions on which are to be made "democratically and with a maximum of citizen involvement and self-determination." N.J.S.A. 18A:7A-2(a)(6). Section 7 of that same act also requires, in part, that each local board of education shall establish particular educational goals, objectives and standards pursuant to rules prescribed by the State Board. N.J.S.A. 18A:7A-7.
N.J.S.A. 18A:33-1 requires each school district to provide for all resident children a course of study suitable to their age and attainment.
Many of these statutory requirements have been implemented in Chapter 8 of Title 6 of the Administrative Code. These code provisions include general statements to the effect that a thorough and efficient education shall be provided to all students. In addition, certain minimum high school curriculum requirements have been established. N.J.A.C. 6:8-4.2(c).
These statutory provisions and implementing code regulations leave little doubt that the choice of which courses to *167 offer and, necessarily, the content of those courses, is a discretionary decision left to the local boards of education, subject only to the periodic review of the Commissioner and State Board of Education. In such a case "the decision is entitled to a presumption of correctness and will not be upset unless there is an affirmative showing that such decision was arbitrary, capricious or unreasonable." Thomas v. Morris Tp. Bd. of Ed., 89 N.J. Super. 327, 332 (App.Div. 1965). An "action of the local board which lies within the area of its discretionary powers may not be upset unless patently arbitrary, without rational basis or induced by improper motives." Kopera v. West Orange Bd. of Ed., 60 N.J. Super. 288, 294 (App.Div. 1960).
We conclude that the local board's decision not to offer behind-the-wheel training is a discretionary decision which was reviewed and upheld by the Commissioner and State Board.
The Association has not presented any single instance where the T & E Clause has mandated that a given course be included in a curriculum. Many skills not taught in public schools would open new employment opportunities to large numbers of students. Must every public school system offer a full range of computer science courses? Should the curriculum of each district reflect the career goals and expectations of all or most or some of its students? The problems flowing from courts reading mandatory curriculum content into the T & E Clause are legion. The policy reasons for mandating the inclusion of driver education are not sufficiently compelling for this court to break such new ground.
The administrative law judge found behind-the-wheel training an integral portion of the driver education curriculum as included in the health program. He defined "integral" as "essential to completeness," "formed as a unit with another part." He went on to find that nothing in New Jersey law indicated a de jure relationship between the two parts of driver education. Certainly no one can argue with his conclusion that behind-the-wheel instruction has a "de facto relationship" with the classroom *168 instruction. The purpose of the classroom instruction is to make the students aware of the automobile, its operation, its maintenance and the rules and regulations pertaining to its use. Such instruction must be directly related in fact to "hands on" training.
However, the administrative law judge found no de jure relationship, and the Association in this appeal has not provided any additional case law or statutory language or even any policy arguments, which would compel the conclusion that behind-the-wheel training is an essential or integral portion of classroom driver education in any legal sense. Both the administrative law judge and the Association analogize driver education without "hands-on" training to a science course taught without integrated laboratory training. Neither the administrative law judge nor the Association provides any support for finding driver education more akin to science than to, e.g., swimming. Courts cannot require schools to provide practical training for all topics the Board chooses to have discussed in the classroom. Neither the administrative law judge nor the Association demonstrated what legal implications must flow from a simple de facto relationship. The issue as to whether the driver education program can be bifurcated with the behind-the-wheel training portion offered at a time other than during the regular school hours was addressed in Camp in a challenge to the legality of a curricular change authorized by a local board of education which resulted in the termination of employment of tenured teachers. 1977 S.L.D. at 706. As an element of that case the Commissioner was required to determine whether behind-the-wheel training could be relegated to nonschool hours and contracted on an hourly basis to be taught by persons other than salaried teaching staff members. Id. at 709. Without giving any analysis, the Commissioner found in Camp that the board may legally relegate behind-the-wheel training to nonschool hours even when it was still considered part of the curriculum. Id. at 711. Camp recognized that behind-the-wheel training is qualitatively different from conventional academic *169 studies: "it is usually completed in as few as six hours of individual instruction and not commonly assigned credit." Id. We see nothing that would necessarily require behind-the-wheel training to be taught in regular school hours. It is noteworthy that such training must be provided in very small groups of students making scheduling of training for all high school sophomores within regular hours very difficult.
The Commissioner declared, without giving reasons, that behind-the-wheel training "must be offered exclusively during those hours in which the Adult School is normally in session." Although we might speculate on his reasons, we prefer not to. It has not been established in this record what the hours of the Adult School are, and whether after-school and Saturday sessions must be eliminated under the Commissioner's decision. Since we conclude that behind-the-wheel training may be offered by the Adult School, we see no reason to place a limitation on the hours unless the Adult School generally has legally restricted hours.
The Association argues that the Adult Evening School is designed to serve an entirely different population than the regular school. It sees the arrangement under which students are charged a fee of $105 for behind-the-wheel training as a method of "permitting the Board to assess a large fee in violation of the thorough and efficient clause," and that if the Board elects to teach a specific course to "regular students" it "must do so through a regular school. Otherwise any course could be offered through the Evening Adult School." The Board does not argue for such a broad extrapolation of their powers. Plaintiffs' conclusion follows from its premise that driver education, including behind-the-wheel training, is a mandatory course  a premise we reject.
Willet v. Colts Neck Tp. Bd. of Ed., 1966 S.L.D. 202, 206, and In the Matter of the Appeals of the Black Horse Pike and Sterling Regional School Districts Bds. of Ed., 1973 S.L.D. 130, aff'd 1973 S.L.D. 138, relied on by the Association, are not apposite. Both were concerned with the impermissibility of *170 charging fees for activities that were an integral part of classroom instruction and/or for which credit was given. Without the Association's premise that behind-the-wheel training should be so characterized, the permissibility of charging a fee for the training is unquestionable.
Finally, the Association questions whether behind-the-wheel training may be taught by individuals not certified by the New Jersey State Board of Examiners.
The State Board of Examiners has the duty to issue teaching certificates to those individuals qualified to teach in the public schools. N.J.S.A. 18:6-38. Because behind-the-wheel training is not taught in the public schools, as we have noted above, we find no merit in this issue.
In Camp the Commissioner concluded that behind-the-wheel training may be relegated to hours other than the regular school day, assuming the schools provide for "proper supervision and the use of certified teachers." 1977 S.L.D. at 711. The decision was given, however, in the context of the local board acknowledging factually that behind-the-wheel training was an integral part of its classroom driver education program. Camp, therefore, is not relevant here.
Affirmed.