NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0716-23

I/M/O THE VERIFIED PETITION
FOR THE PROPOSED
CREATION OF A PK-12 ALL-
PURPOSE REGIONAL SCHOOL
DISTRICT BY THE BOROUGH
OF SEA BRIGHT, BOROUGH OF
HIGHLANDS, BOROUGH OF
ATLANTIC HIGHLANDS,
HENRY HUDSON REGIONAL
SCHOOL DISTRICT, ATLANTIC
HIGHLANDS SCHOOL
DISTRICT, AND HIGHLANDS
BOROUGH SCHOOL DISTRICT,
MONMOUTH COUNTY.

> **APPROVED FOR PUBLICATION**
>
> **November 26, 2024**
>
> **APPELLATE DIVISION**

---

Argued October 1, 2024 – Decided November 26, 2024

Before Judges Sumners, Perez Friscia and Bergman.

On appeal from the New Jersey Department of Education.

Joseph F. Betley argued the cause for appellant Shore Regional Highschool District (Capehart & Scatchard, PA, attorneys; Joseph F. Betley, of counsel and on the joint briefs; Geoffrey N. Stark, on the joint briefs).

Isabel Machado argued the cause for appellant Oceanport Board of Education (Machado Law Group, attorneys; Isabel Machado, of counsel and on the joint briefs; Christine Magee, on the joint briefs).

Vito A. Gagliardi, Jr. argued the cause for respondent Borough of Sea Bright (Porzio, Bromberg & Newman, PC, attorneys; Vito A. Gagliardi, Jr., of counsel and on the brief; Kerri A. Wright, of counsel; Thomas J. Reilly, on the brief).

Amna T. Toor, Deputy Attorney General, argued the cause for respondent New Jersey Commissioner of Education (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Amna T. Toor, on the brief).

The opinion of the court was delivered by

BERGMAN, J.S.C. (temporarily assigned)

In this appeal, the court addressees an issue of first impression — whether a school district merged with another school district under N.J.S.A. 18A:8-44 has standing to withdraw from that district to join a newly formed all-purpose regional school district pursuant to N.J.S.A. 18A:13-47.11. Oceanport Board of Education (Oceanport) and Shore Regional High School District Board of Education (Shore Regional) appeal from the September 22, 2023 decision of the Commissioner of Education which determined the Borough of Sea Bright (Sea Bright) had standing to withdraw from their districts and to petition the Commissioner for approval to join the all-purpose regional Henry Hudson School District (Henry Hudson) pursuant to N.J.S.A. 18A:13-47.11.

After our review of the record and applicable law, including the legislative history behind the enactment of N.J.S.A. 18A:13-1 to -81, we

conclude the Commissioner's decision correctly interpretated N.J.S.A. 18A:13-47.11 because it comported with the statute's plain language and purpose that was passed as part of a larger statutory scheme following the enactment of N.J.S.A. 40A:65-1 to -35 and N.J.S.A. 18A:8-43 to -51, to provide financial incentives to encourage shared services, financial accountability, and consolidation and regionalization of school districts. Since the Commissioner's decision was supported by the record and was not arbitrary, capricious, or unreasonable, we affirm.

## I.

The salient facts in this appeal are generally not in dispute. On June 30, 2009, the Governor signed into law L. 2009, c. 78, codified at N.J.S.A. 18A:8-43 to -51, which sets forth the procedures for the elimination of school districts that are not operating schools and merging them with other districts. The legislation directed the State's executive county superintendents to eliminate non-operating districts in accordance with a plan and schedule as approved by the Commissioner. N.J.S.A. 18A:7-8(g). In addition, N.J.S.A. 18A:8-44 provided the executive county superintendent "shall eliminate any non-operating district and merge that district with the district with which it participates in a sending-receiving relationship."

On July 1, 2009, the Commissioner announced the elimination of thirteen non-operating districts that were in a sending-receiving relationship with a single school district. Among the non-operating districts eliminated was Sea Bright, which was "merged" with the Oceanport Borough School District announced by a Department of Education release dated July 9, 2009.[1] As a result, students residing in Sea Bright currently attend Oceanport for grades pre-kindergarten through eight, and Shore Regional High School for grades nine through twelve.

On February 1, 2022, Sea Bright's governing body passed a resolution finding good cause, based on a feasibility study, to seek a withdrawal from the Oceanport and Shore Regional school districts and to join the Boroughs of Highlands and Atlantic Highlands in a new all-purpose pre-kindergarten through twelfth grade regional school district. The resolution further stated that Sea Bright would petition the Commissioner for a referendum to submit this issue to the Borough's voters pursuant [to subtitle five, part four, chapter thirteen of Title 18A, entitled "Regional School District" and codified at] N.J.S.A. 18A:13-1 to -81 (Act).

---

[1] This July 1, 2009 release is publicly available and can be accessed at https://www.nj.gov/education/news/2009/0701nonops.pdf.

The Highlands and Atlantic Highlands Boroughs passed similar resolutions on February 2, 2022, and June 9, 2022, respectively, requesting their respective school boards to join Henry Hudson. Later in June, these municipalities' boards of education passed resolutions calling for the expansion of Henry Hudson from a limited purpose high school district to an all-purpose pre-kindergarten to twelfth grade regional district and for Sea Bright's inclusion in the new district.

In July 2022, the Boroughs of Sea Bright, Highlands, Atlantic Highlands, along with the boards of education of Highlands, Atlantic Highlands, and Henry Hudson (collectively Tri-Districts)[2], filed a verified petition with the Commissioner requesting authorization to proceed to a referendum on the expansion of Henry Hudson from a limited-purpose regional school district serving grades seven through twelve to an all-purpose pre-kindergarten through twelfth grade regional school district. The joint petition also requested the inclusion of Sea Bright in the expanded district, when and if Sea Bright's withdrawal from the Oceanport and Shore Regional school districts was approved.

---

[2] Pursuant to our order of June 24, 2024, the Boroughs of Highlands and Atlantic Highlands have been dismissed from this appeal. Additionally, a stipulation of dismissal filed on June 28, 2024, likewise dismissed the Tri-Districts from this appeal.

A-0716-23

While this petition was pending, the Tri-Districts submitted an amended petition and feasibility study in March 2023, requesting to proceed to a referendum, without Sea Bright, to expand Henry Hudson to an all-purpose pre-kindergarten through twelfth grade regional school district consisting of Atlantic Highlands and Highlands as constituent school districts. The Commissioner granted this unopposed, amended petition on July 21, 2023.

On September 6, 2023, Sea Bright and Highlands submitted correspondence to the Commissioner clarifying the relief they requested – i.e., in the event the voters of the Boroughs of Highlands and Atlantic Highlands approve the creation of Henry Hudson, the Commissioner should also approve Sea Bright's withdrawal from the Oceanport and Shore Regional districts so that it may join the newly created district.

The Commissioner treated the September 6, 2023 correspondence as an amended petition, and issued a decision on September 22, 2023, holding that the Tri-Districts' first joint petition filed on July 15, 2022, which included Sea Bright, was moot in in light of her July 21, 2023 decision permitting Atlantic Highlands and Highlands to proceed to referendum on forming a regional school district without Sea Bright.

Concerning Sea Bright's petition for withdrawal from the Oceanport and Shore Regional school districts, the commissioner relied upon N.J.S.A. 18A:13-47.11(a), which states in relevant part:

> Notwithstanding any other law, rule, or regulation to the contrary, a board of education of a local school district or of a local school district constituting part of a limited purpose regional district, the board of education or governing body of a non-operating school district, or the governing body of a municipality constituting a constituent district of a limited purpose regional district, part of an all purpose regional district, or part of a consolidated school district may, by resolution, withdraw from a limited purpose or all purpose regional district or consolidated school district in order to form or enlarge a limited purpose or all purpose regional district.

The Commissioner then addressed Sea Bright's September 6 letter-petition and found it was "submitted to the New Jersey Department of Education on behalf of the Borough of Sea Bright requesting to form a pre-kindergarten through twelfth grade Regional School District with the Atlantic Highlands and Highlands municipalities." The Commissioner granted in part and denied in part Sea Bright's request. First, she rejected the Boards' arguments that "Sea Bright as a standalone municipality that is part of a consolidated school district lacks standing to pursue withdrawal" and that only they, as the boards of education "responsible for the education [of] the students of Sea Bright" have standing to seek withdrawal. The Commissioner found:

> [The Boards'] reading of [N.J.S.A. 18A:13-47.11] belies its clear language. The statute applies not only to Boards of education, but also specifically identifies "the governing body of a municipality constituting a constituent district of a limited purpose regional district, part of an all-purpose district, or part of a consolidated school district" as governmental bodies that may request withdrawal to join or form an enlarged regional school district. The statute contemplates that a municipality, such as Sea Bright, may seek withdrawal from a regional or consolidated school district. Therefore, Sea Bright has standing to seek withdrawal from Oceanport and Shore Regional in accordance with N.J.S.A. 18A:13-47.11.

However, the Commissioner found Sea Bright's request to join Henry Hudson was premature, noting the "unique procedural posture" of the matter. The Commissioner reasoned the referendum vote in Highlands and Atlantic Highlands to form the enlarged all-purpose district had not yet taken place, and therefore there was no district for Sea Bright to join yet. She then invited Sea Bright and the Tri-Districts to refile a joint request to form an enlarged school district if they so choose when and if the September 26, 2023, referendum involving the Tri-Districts passed.[3]

II.

---

3  See the results posted by the Monmouth County Clerk at Election Night Reporting for 2023 Henry Hudson Regional Special School Election, Monmouth Cnty. Clerk, https://results.enr.clarityelections.com/NJ/Monmouth/118568/ (Oct. 3, 2023, 5:19:08 PM).

On appeal, the Boards challenge only the Commissioner's ruling that Sea Bright has standing to pursue withdrawal from their respective districts pursuant to N.J.S.A. 18A: 13-47.11. They argue Sea Bright is not an entity permitted to unilaterally withdraw from a school district according to the statute's plain language. They assert there are four types of entities the statute authorizes to seek withdrawal consisting of:

> (1) the board of education of a local school district; (2) the board of education of a local school district constituting part of a limited purpose regional district; (3) the board of education or governing body of a non-operating school district; or (4) the governing body of a municipality constituting one of the following: (a) a constituent district of a limited purpose regional district; (b) a constituent district of an all-purpose regional district; or (c) a constituent district of a consolidated school district.
>
> [N.J.S.A. 18A:13-47.11(a)]

The Boards argue because Sea Bright is a municipality and not a board of education, the first two categories of entities do not apply. Turning to the third category of entities, the Boards argue this category is inapplicable because, although Sea Bright is a "governing body," "there is no extant non-operating school district in Sea Bright." They note that prior to 2009, a non-operating school district did in fact exist because the non-operating Sea Bright School District was engaged in a send/receive agreement with Oceanport. However, they argue because the non-operating Sea Bright School District was

9

eliminated on July 1, 2009 through its merger with Oceanport, there cannot, as a matter of law, be a governing body for a district that does not exist.

Next, the Boards argue Sea Bright does not qualify under any prong of the fourth category. First, they assert upon Sea Bright School District's elimination, the district "merged" with the newly created Oceanport School District. The Boards also emphasize, upon elimination of a non-operating school district, "the books, documents, and records of that district shall be turned over to the board of education of the new district" pursuant to N.J.S.A. 18A:8-49. The Boards argue this "did not create a consolidated school district" pursuant to statute, and rather the Legislature chose instead to "merge" the eliminated districts, as opposed to consolidating them which they posit is a distinctive difference.

In support of their argument to differentiate a merged district from a consolidated district, the Boards assert in consolidated districts, board of education membership is apportioned between the two formerly independent districts by population. N.J.S.A. 18A:8-29. By contrast, the membership of the board in a merged district following the elimination of a non-operating district is elected at large from the new district in the first school election. N.J.S.A. 18A:8-47(a). They argue Oceanport School District does not constitute a "consolidated school district" as defined by Title 18A because it

holds school elections in which voters in Sea Bright and Oceanport participate at-large, and the district was created through a separate statutory mechanism than those of consolidated school districts. Therefore, only Oceanport, as a "single local school district," may act on behalf of the interests of the people of Sea Bright to invoke the withdrawal statute.

The Boards further contend when the Legislature adopted N.J.S.A. 18A:13-47.11, it "intended to exclude Sea Bright" from the list of entities eligible to seek regionalization through the statute. They point to N.J.S.A. 18A:13-34, which includes two categories similar to those identified in N.J.S.A. 18A:13-47.11(a), but which also includes a category "not found" in the latter provision which is a board of education of a "district comprising two or more municipalities." The Boards argue "this new category stands in contrast to a consolidated district and does appear in the list of entities able to withdraw from a consolidated district or regional district," and if "the Legislature intended to include entities other than those specified in N.J.S.A. 18A:13-47.11(a) it had the means to do so." They assert their argument is supported by N.J.S.A. 18A:13-43, and that the Legislature "only authorized boards of education [and not municipalities of former non-operating districts] to submit a question regarding regional school district enlargement to voters."

11

The "inescapable conclusion" this leads to is that entities not enumerated in N.J.S.A. 18A:13-47.11(a) were "intentionally left out."

The Boards argue such a conclusion is consistent with the general principle that statutes should be interpreted by first examining the plain language of the Act. See Point Pleasant Borough PBA Local No. 158 v. Borough of Point Pleasant, 412 N.J. Super 328, 334-35 (App. Div. 2010). The Boards claim the statute is clear and unambiguous, and the "only reasonable conclusion to reach from a review of the statutory language" is a municipality like Sea Bright "does not have the ability to withdraw from the district with which it was statutorily merged or from any limited purpose regional district of which the merged district is a constituent."

In response, Sea Bright argues we should affirm the Commissioner's decision because: (1) the Commissioner is entitled to substantial deference, and her interpretation of N.J.S.A. 18A:13-47.11 should not be disturbed unless "plainly unreasonable," which it is not; (2) the school laws provide that merged districts such as Sea Bright and Oceanport are subject to chapter thirteen's withdrawal provisions; and (3) the Boards' arguments to the contrary "would create an illogical result at odds with the school laws and with the Legislature's intent in amending the regionalization statute to encourage increased regionalization efforts."

12

Sea Bright further argues, "particularly when viewed in light of the overall statutory scheme," the Commissioner's decision is not "plainly unreasonable," but "fair, practical, and unassailable." Sea Bright argues the Boards' contention the school laws treat merged districts differently from regional or consolidated districts is without merit because N.J.S.A. 18A:8-44(2)(a), titled "Elimination of non-operating district through merger," describes the process for merger, but does not "state that such districts are subject to a unique classification separate and distinct from regional or consolidated school districts."

Sea Bright also points to N.J.S.A. 18A:8-50, titled "Governing of a new district," which, "[m]ost importantly," provides: "Unless otherwise provided in this act, a new district formed pursuant to section 2 of this act [i.e., a municipality "merged" into another] shall be governed by the provisions of chapter 13 of Title 18A of the New Jersey Statutes." Therefore, Sea Bright argues districts merged pursuant to N.J.S.A. 18A:8-44(2)(a) should be governed by the withdrawal provisions in N.J.S.A. 18A:13-47.11.

Sea Bright also emphasizes disjunctive language in the withdrawal statute, which provides a board of education, or a municipal governing body may seek to withdraw from a regional or consolidated school district. It notes that the Legislature authorized municipal bodies to apply for feasibility study

grants for regionalization under N.J.S.A. 18A:13-47.3 and, given "chapter 13's statutory scheme empowers municipalities to seek withdrawal from a district on their own accord, permits them to apply for feasibility study grants, and expressly applies chapter 13 to municipalities that have been merged into other school districts," the Legislature must have intended that municipalities such as Sea Bright "are permitted to seek withdrawal from a regional or consolidated school district."

Sea Bright contends the Boards' arguments suggest it must somehow "demerge" from Oceanport and become its own non-operating school district before seeking withdrawal, but "any such action would be impossible." Sea Bright asserts "[n]o statute or regulation provides a mechanism to facilitate such a process," and this position would "undermine New Jersey's salutary public policy of encouraging KD-12 regionalization, as well as educational and fiscal improvement."

Sea Bright also rejects the Boards' argument that the Legislature chose to exclude entities like Sea Bright from the withdrawal provision, by referencing a separate statutory provision of chapter thirteen which includes a category not found in N.J.S.A. 18A:13-47.11(a), namely the "board of education of a district comprising two or more municipalities." N.J.S.A. 18A:13-34. Sea Bright notes 18A:13-34 has "nothing at all to do with a municipality's ability

14

to withdraw" from a district, and chapter thirteen defines "municipality" and "board of education," but not "board of education of a district comprising two or more municipalities." Therefore, it argues "[g]iven that the Legislature did not define the term and that it does not appear throughout chapter 13, there is no credence to [the Boards'] argument that the Legislature created a 'new category' of district for purposes of chapter 13."

Sea Bright further asserts the Boards' position arguing the Legislature intended "to exclude forever a select few 'merged' municipalities from the right to withdraw" from a regional or consolidated district, while "permitting other, similarly-situated municipalities" to do so would create "an irrational and profoundly absurd result," and such an outcome "robs Sea Bright . . . of the ultimate autonomy to make their own decisions concerning public education." It contends this argument is buttressed by the fact Oceanport holds at-large elections for its board of education and, because the seats are not apportioned by boroughs and "Oceanport is four times more populous than Sea Bright, its candidates likely will win any open seat by an overall majority." Sea Bright argues without the power vested by the withdrawal provision, it "stand[s] at the mercy of the district in which they have merged."

The Commissioner joins in Sea Bright's arguments. In addition, the Commissioner argues the Department of Education uses the term "consolidate"

15

synonymously with "merge." To support this contention, the Commissioner points first to N.J.S.A. 18A:8-44(a), which simply states the county superintendent "shall eliminate any non-operating district and merge that district with the district with which it participates in a sending-receiving relationship." The Commissioner compared this statutory provision to Department regulations, specifically N.J.A.C. 6A:23A-2.4(a)(1), which governs the elimination of non-operating school districts and provides the county superintendent shall submit a plan to the Commissioner that includes the superintendent's "recommendation as to the most appropriate local public school district within the county for the . . . [non-operating district] with which to consolidate." Additionally, the Commissioner points to the part of the administrative code stating the plan shall include "[a]n estimate of efficiencies and cost savings, if any, resulting from the consolidation of school districts." N.J.A.C. 6A:23A-2.4(a)(6).

The Commissioner also asks us to reject the Boards' argument that the Legislature intended to exclude "merged" municipalities from those entities able to invoke their rights under N.J.S.A. 18A:13-47.11 as contrary to the strong public policy of this State to encourage regionalization. To support this assertion, the Commissioner highlights N.J.S.A. 18A:8-51, which states, "[n]othing in this act [governing non-operating districts] shall be construed to

prohibit an executive county superintendent from including a former non-operating district in the consolidation plan submitted by the executive county superintendent to the commissioner pursuant to subsection h of N.J.S.A. 18A:7-8." The Commissioner also contends N.J.S.A. 18A:7-8(h) states a superintendent will devise "a school district consolidation plan to eliminate all districts, other than county-based districts and other than preschool or kindergarten through grade 12 districts in the county, through the establishment or enlargement of regional school districts." It also provides the regional district "shall be established or enlarged in accordance with chapter 13 of Title 18A." Ibid.

In reply, the Boards argue the Commissioner's position citing N.J.S.A. 18A:8-51 and 18A:7-8(h) lacks support. Specifically, they argue the Commissioner's reliance on N.J.S.A. 18A:8-51 and 18A:7-8(h) as supportive of the interpretation that the terms "merge" and "consolidate" are interchangeable is incorrect. The Boards argue that the text of N.J.S.A. 18A:8-51 "shines a spotlight on the fact that, if it wanted to, the Legislature could have included entities such as Sea Bright clearly and without ambiguity in N.J.S.A. 18:A-13-47.11, but it did not."

In addition, the Boards assert Sea Bright's position, as joined by the Commissioner, claiming without the power to unilaterally withdraw from their

17

districts Sea Bright will be at the mercy of the districts into which it has merged is misplaced. The Boards posit the "people of Sea Bright, like any other constituency within the geographic boundaries of a school district can put forth candidates and elect members who share their policy goals" and they are not, as Sea Bright suggests, "helpless outcasts who are subject to the whims of a school board in which they have no voice." The Boards maintain that permitting Sea Bright "to unilaterally force a reduction in both Oceanport and Shore Regional . . . [would] introduce[e] new instability," and "cannot be what the Legislature intended."

The Boards conclude by asserting the Commissioner's reliance on N.J.S.A. 18A:8-50 ignores its prefatory clause which limits its application. They argue N.J.S.A. 18A:13-47.11 expressly limits the application of N.J.S.A. 18A:8-50 by excluding entities such as Sea Bright.

### III.

We are guided by established principles when reviewing decisions from state administrative agencies. "Our review of administrative agency action is limited," Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011), but we are not "relegated to a mere rubber-stamp of agency action," Williams v. Dep't of Corrs., 330 N.J. Super. 197, 204 (App. Div. 2000). Rather, we engage in a "careful and principled" examination of the agency's

findings.  Ibid.  (quoting Mayflower Sec. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

A reviewing "court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).  In the absence of such a showing, we accord substantial deference to an agency's fact-finding and legal conclusions, recognizing "the agency's 'expertise and superior knowledge of a particular field.'"  Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). It is generally not the function of a reviewing court "to weigh the evidence, to determine the credibility of witnesses, to draw inferences and conclusions from the evidence, and to resolve conflicts therein."  In re Grossman, 127 N.J. Super. 13, 23 (App. Div. 1974).

"The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).  Where an agency decides an issue of law, its "decision do[es] not carry

19

a presumption of validity and it is for this court to decide whether those decisions are in accord with the law." Parsippany-Troy Hills Educ. Ass'n v. Bd. of Educ., 188 N.J. Super. 161, 165 (App. Div. 1983).

While the court's review of a strictly legal question stands "on equal footing" with that of an administrative determination, Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020), courts will "defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is plainly unreasonable," E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022). "This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." Ibid. Thus, courts review decisions "made by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard." Ibid.

"'The starting point of all statutory interpretation must be the language used in the enactment.'" Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018) (quoting N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 178 (2014)). Courts "ascribe to the statutory words their ordinary meaning and significance." DiProspero v. Penn, 183 N.J. 477, 492 (2005); see also N.J.S.A.

1:1-1 ("words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language").

Courts should refrain from rewriting plainly written statutes, but "[if], however, the Court determines that 'a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control.'" State v. Frye, 217 N.J. 566, 575 (2014) (quoting Turner v. First Union Nat'l Bank, 162 N.J. 75, 84 (1999)); see also State v. O'Connor, 105 N.J. 399, 408 (1987) (courts should not "accord controlling significance to a mechanical rule of statutory construction when to do so would violate the clear policies that form the foundation" of a statute). Additionally, if statutory language is unambiguous, a "court should not 'resort to extrinsic interpretative aids.'" DiProspero, 183 N.J. at 492 (quoting Lozano v. Frank DeLuca Const., 178 N.J. 513, 522 (2004)). However, where there "is ambiguity in the statutory language that leads to more than one plausible interpretation . . . [courts] may turn to extrinsic evidence." Ibid. Courts may also "resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language." Id. at 493.

IV.

We first address the Boards' argument that Sea Bright's school district was eliminated through its merger with Oceanport in 2009. Therefore, the Boards contend Sea Bright's district cannot "constitute part of a larger whole, because as a threshold matter the part no longer exists." We interpret this argument to mean its merger with Oceanport eliminated Sea Bright's status to withdraw under N.J.S.A. 18A:13-47.11 because Sea Bright's district was eliminated by merger with Oceanport and therefore, its district no longer exists. Therefore, Sea Bright does not have standing to withdraw from Oceanport since only districts or governing bodies of certain categories of districts are permitted to withdraw. Id.

We are unpersuaded by this argument because we conclude the Boards' interpretation belies a rational reading of N.J.S.A. 18A:13-47.11 and, more importantly, the overall purpose of the school district regionalization statute set forth in the Act. We note, the Boards have the burden to demonstrate their interpretation comports with how the Legislature manifestly intended this statute to be read as a whole when challenging the Commissioner's decision.

We begin first recognizing in 2007 the Legislature enacted the Uniform Shared Services and Consolidation Act, N.J.S.A. 40A:65-1 to -35, which created the office of Executive County Superintendent (ECS). Each ECS was charged generally with promoting administrative and operational efficiencies

22

and cost savings within the school districts and, specifically, with the authority to eliminate districts not operating schools as of April 3, 2007, in accordance with a plan to be submitted to the Commissioner of Education. N.J.S.A. 18A:7-8. It is clear the legislation was designed to encourage financial accountability among local government units by reducing duplicative services and "clearing legal hurdles to shared services and consolidation."

In 2009, N.J.S.A. 18A:8-43 to 51 was passed as part of Title 18A, subtitle 5, which amended N.J.S.A. 18A:7-8. Its enactment added to the 2007 legislation, restating the mandate for the elimination and merger of all non-operating school districts and providing for post-merger allocation of appropriations and district governance. Sea Bright was part of this merger. We conclude the merger of Sea Bright comported with this legislative mandate, which encouraged financial accountability and the reduction of duplicative services in school districts through consolidation and regionalization of these districts.

Following the enactment of these statutes, the Legislature passed additional legislation augmenting Title 18A, subtitle 5 when, in 2021, it passed the Act, effective January 18, 2022, titled "Financial Incentives to Form or Enlarge Regional Districts." N.J.S.A. 18A:13-47.11, the statute now in dispute, was part of this enactment.

The preamble of PL. 2021, § 402 states the Act is "concerning school district regionalization." Before its passage, the bill was described as "concerning the creation and enlargement of regional school districts . . . and the withdrawal of certain school districts and governing bodies from regional districts." Legis. Fiscal Estimate for S.B. 3488 (March 24, 2021); see also Governor's Veto Statement to Second Reprint of S.B. 3488, (Nov. 8, 2021) (the bill "provides financial incentives for regionalization").

N.J.S.A. 18A:8-44 which was part of the earlier 2009 legislation provides: "the executive county superintendent of schools shall eliminate any non-operating district and merge that district." Elsewhere in chapter eight, the statute provides, "[e]ach municipality shall be a separate local school district except as otherwise provided in this chapter." N.J.S.A. 18A:8-1. Therefore, although N.J.S.A. 18A:8-44 eliminated Sea Bright's status as a non-operating local school district, Sea Bright as a municipality remained "a separate local school district" pursuant to N.J.S.A. 18A:8-1 especially because it was not defined differently anywhere in Title 18A.

The legislative history of both N.J.S.A. 18A:8-44 and N.J.S.A. 18A:13-47.11 clearly shows both were passed as part of the Legislature's mandate to regionalize school districts by encouraging financial accountability and reducing duplicative services by providing financial incentives. N.J.S.A.

A-0716-23

18A:8-1, enacted as part of these consolidation and regionalization statutes, clearly intended for a municipality like Sea Bright, although merged, to retain its status as a local school district thereby preserving its sovereignty from Oceanport. Therefore, we reject the Board's argument that Sea Bright's district failed to exist after the 2009 merger and conclude, despite its merger with Oceanport, Sea Bright's school district continued to exist as a separate local school district at the time of its application to withdraw in September 2023.

We further conclude, as did the Commissioner, that Sea Bright's governing body is entitled to stand in the place of a board of education.

> "Governing body" means and includes, in the event that a school district enumerated herein does not have a board of education, the governing body of a local school district, a municipality constituting part of a consolidated school district, and the governing body of a municipality constituting a constituent district of a limited purpose or all purpose regional district.
>
> [N.J.S.A. 18A:13-47.1]

By the inclusion of "governing body" in the statute we determine it contemplates the scenario here where a school board of education entity does not exist. In that instance, the statute expressly vests the governing body of the municipality with the same rights a board of education would possess under the statute, including the right to withdraw. Id. Thus, we conclude the

25

legislature authorized Sea Bright's governing body to act in the stead of a school board in seeking withdrawal from its current districts.

We now turn to the Boards' argument that because in 2009 Sea Bright was merged with Oceanport rather than consolidated, it is not entitled to withdraw from this district since it does not meet any category of N.J.S.A. 18A:13-47.11. In their argument to differentiate "merger" from "consolidation", the Boards assert "consolidated school district" is a term of art that refers to districts created and operated pursuant to N.J.S.A. 18A:8-25 and, although the term is used throughout Title 18A, it is wholly distinct from those districts which are "merged" pursuant to N.J.S.A. 18A:8-44.

We point out that both terms are found in chapter eight of Title 18A, but neither term is specifically defined therein, which we determine strains the Boards' argument that the Legislature intended for these terms to be read differently than they would be ordinarily. Moreover, the ordinary meaning of the words belies the Boards' interpretation. "Consolidate" is defined by Mirriam-Webster as "to join together into one whole," and uses "merge" as a synonym to the specific example of "two companies [that] consolidated." Merriam-Webster's Collegiate Dictionary 266 (11th ed. 2012). "Merge" is "to cause to combine, unite, or coalesce" or to "become combined into one." Id. at 777. Without specific evidence the Legislature intended the two words to be

understood differently, we determine an ordinary reading leads to the opposite conclusion than argued by the Boards. Therefore, by their absence, we determine the Legislature intended to include merged districts such as Sea Bright into consolidated districts based on their identical definitions.

In addition, we determine Sea Bright is a constituent district of Oceanport and, by operation, is a constituent district of Shore Regional. Sea Bright's resident constituents are entitled to vote in the elections of school board members for Oceanport since their municipality is part of that school district.

Further, we determine Sea Bright was defined as a new district formed pursuant to N.J.S.A. 18A:8-44 which shall be governed by the provisions of the Act. See N.J.S.A. 18A:8-50. We conclude this statutory provision requires Sea Bright to be governed by "chapter 13 of Title 18A of the New Jersey Statutes." This chapter applies to regional school districts including the pivotal statute at issue, N.J.S.A. 18A:13-47.11. Since the legislature did not specifically set forth terms or rules anywhere in Title 18A for the withdrawal of non-operating school districts merged pursuant to N.J.S.A. 18A:8-44, and specifically applied the Act to these districts, we conclude the withdrawal provisions at N.J.S.A. 18A:13-47.11 apply to Sea Bright. We also conclude the only rational interpretation of the cited statutory provisions is the

27

legislature intended Sea Bright to be treated as a constituent district of a consolidated or regional district.

Applying the foregoing determinations to the provisions contained in N.J.S.A. 18A:13-47.11, we conclude Sea Bright is a governing body of a local school district constituting a constituent district of a limited purpose regional district (Shore Regional) . . . or part of a consolidated school district (Oceanport) which may, pursuant to the resolution passed by the governing body of Sea Bright, withdraw from a limited purpose . . . regional district (Shore Regional) or consolidated school district (Oceanport) in order to form or enlarge a limited purpose or all purpose regional district (Henry Hudson). Therefore, we conclude the Commissioner's determination that Sea Bright had standing to withdraw from Oceanport and Shore Regional correctly interpreted N.J.S.A. 18A:13-47.11(a).

For the sake of completeness, we address the Boards' remaining arguments. They point to N.J.S.A. 18A:13-34, which they assert was enacted at the same time as N.J.S.A. 18A:13-47.11 through L. 2021, c. 402, but which encompasses a different category not contained in the latter section, for boards of education of a district "comprising two or more municipalities." They argue this category of entity "stands in stark contrast to a consolidated district or regional district," and serves as evidence that, had "the Legislature intended to

include entities other than those specified in N.J.S.A. 18A:13-47.11(a) it had the means to do so."

We find little merit to this argument based on our prior reasoning that determined Sea Bright is a governing body of a local school district constituting a constituent district of both Oceanport and Shore Regional. We also point out the sections cited by the Boards concern a constituent municipality that has an actual board of education which is completely different than Sea Bright, which does not have a board of education. We also agree with Sea Bright's analysis that our legislature did not define the term "board of education of a district comprising two or more municipalities" and this terminology does not appear in Title 18A, therefore we conclude the legislature did not specifically create this new category of school district contrary to the Boards' argument.

We now turn to the Boards' argument referencing board member apportionment in consolidated districts pursuant to N.J.S.A. 18A:8-29 compared to the at-large elections for merged districts to support their position that a merged district is distinct from a consolidated district. This statute provides board membership in consolidated districts are apportioned among "the several consolidating districts as nearly as may be according to the number of their inhabitants." Ibid. By contrast, with non-operating districts

29

merged into newly formed districts pursuant N.J.S.A. 18A:8-47, seats are not apportioned but instead "elected at-large by the voters of the new district."

We recognize the differences between these two sections of chapter eight give weight to the Boards' argument that the Legislature intended "merged" and "consolidated" districts as separate and distinct from the other. However, we determine this argument is eclipsed by the language of N.J.S.A. 18A:8-50, cited previously, that provides new districts including Sea Bright "formed pursuant to [N.J.S.A. 18A:8-44] . . . shall be governed by the provisions of [the Act.]" Boards of newly merged districts via N.J.S.A. 18A:8-44, may be subject to a different electoral structure; however, we determine it does not follow they are otherwise not "consolidated", specifically because N.J.S.A. 18A:50-1 directs districts such as Sea Bright to be governed by the Act. No where in the statute does it state or even suggest the districts "merged" with other districts in 2009 should not be considered consolidated with that district for withdrawal purposes despite the different election process delineated between merged and consolidated districts.

In addition, the Boards' view that Sea Bright would not be disempowered if it lacked standing to withdraw lacks support. We determine Sea Bright would be robbed of its autonomy to make decisions concerning public education for its students if the Boards' interpretation of this statute is

30

accepted. The two districts hold elections at-large, and Oceanport is four times the size of Sea Bright, making it difficult if not impossible for Sea Bright candidates to be elected in a number which would form a majority when Sea Bright candidates take positions which differ from the interests of Oceanport voters. We conclude this scenario would lead to a serious dilemma because Sea Bright would be unable to unilaterally withdraw from the Oceanport and Shore Regional districts through the normal elective process because of this at-large designation.

We further conclude the at-large election process for Oceanport leaves Sea Bright with little to no real ability to ever withdraw from that district if we accept the Board's arguments. We determine without a specifically enunciated statutory provision or legislative purpose stating otherwise, tethering municipalities like Sea Bright to the larger, more populous Oceanport and foreclosing its ability to withdraw and to regionalize with other districts does not fit into the overall legislative purpose of the Act which was enacted as part of an overall statutory scheme to encourage shared services, financial accountability, and consolidation and regionalization of school districts. See N.J.S.A. 40A:65-1 to -35; N.J.S.A. 18A:8-43 to -51 and N.J.S.A. 18A:13-1 to -81.

V.

31

We also conclude to interpret N.J.S.A. 18A:13-47.11(a) in the manner requested by the Boards would lead to a manifestly absurd result. As we noted in Section IV herein, the Act concern[ed] school district regionalization. The bill which eventually passed into law concerned the creation and enlargement of regional school districts . . . and the withdrawal of certain school districts and governing bodies from regional districts. Legis. Fiscal Estimate for S.B. 3488 (March 24, 2021). The Governor also stated the bill "provides financial incentives for regionalization." Governor's Veto Statement to Second Reprint of S.B. 3488, (Nov. 8, 2021). Against this backdrop we are unable to conclude the Legislature—through a bill that promoted regionalization—meant to hamstring a municipality from withdrawing and joining a regional school district, especially because it did not expressly foreclose the withdrawal of merged districts, like Sea Bright, in any part of the statute.

We agree with Sea Bright's position that it would essentially be required to "demerge" from Oceanport and become its own non-operating local school district again before seeking withdrawal if we were to adopt the Boards' distinction between the words "merger" and "consolidate." We determine this would be illogical and contrary to the legislative purpose of the Act.

We reject the Boards' argument that only new legislation specifically addressing the withdrawal requirements for those districts which were merged

with other districts in 2009 can remedy Sea Bright's dilemma because this interpretation is contrary to the language of the statute and its strong incentivizing purposes for school districts to regionalize.

VI.

In sum, we conclude the Commissioner's findings were not plainly unreasonable or contrary to public policy. Further, the Commissioner's decision that Sea Bright has standing to withdraw from Oceanport and Shore Regional flows logically from the language in N.J.S.A. 18A:13-47.11, fulfills the legislative purpose of the Act, follows the common synonymous definitions of "consolidate" and "merge," and is adequately supported by the record. We also determine the Commissioner's interpretation of N.J.S.A. 18a:13-47.11 is entitled to our deference because it is within the "sphere of the [Commissioner's] authority . . . in administering and regulating a legislative enactment within its field of expertise." E. Bay Drywall, 251 N.J. at 493. We determine any contrary interpretation would lead to an unjust result which delegitimizes Sea Bright's sovereignty to manage the education decisions for its resident students.

To the extent we have not addressed any of the remaining arguments of the parties, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-0716-23

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0716-23