**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3814-22

IN THE MATTER OF
JAMES BARTOS,
DEPARTMENT OF
TRANSPORTATION.

_____

Argued February 24, 2025 – Decided June 5, 2025

Before Judges Jacobs and Jablonski.

On appeal from the New Jersey Civil Service Commission, Docket No. 2021-177.

Robert P. Altemus argued the cause for appellant James Bartos (Wind & McCarter, PA, attorneys; Herbert L. McCarter, on the brief).

Dennis J. Mikolay, II, Deputy Attorney General, argued the cause for respondent New Jersey Department of Transportation (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Dennis J. Mikolay, II, on the brief).

Matthew J. Platkin, Attorney General, attorney for New Jersey Civil Service Commission (Brian D. Ragunan, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant, James Bartos, a former highway technician with the New Jersey Department of Transportation ("NJDOT"), appeals the final administrative action of the Civil Service Commission upholding a charge of "Resignation Not in Good Standing" entered pursuant to N.J.A.C. 4A:2-6.2. For reasons that follow, we reverse the Commission's final administrative action and reinstate the initial decision of Administrative Law Judge (ALJ), who concluded the NJDOT had not sustained its burden of proof for the charge concerned.

I.

Bartos was employed by the NJDOT as a highway operations technician, assigned to the Ramsey maintenance yard. Having received worker's compensation in 2014 for a work-related injury, Bartos requested to reopen his claim and was scheduled to be evaluated by an NJDOT physician on March 23, 2020. However, before his scheduled appointment, the yard temporarily closed after an employee tested positive for COVID-19. Accordingly, the NJDOT imposed a required quarantine period from March 20 to April 3, 2020, followed by the reactionary mode policy effective April 6, 2020, which required essential employees, including those necessary to maintain public operations during business interruptions and weather-related emergencies, to be on standby at home and respond to the daily check-in calls. Bartos was classified as an

2

essential employee.

On April 6, 2020, the assistant crew supervisor phoned Bartos to confirm his work availability. Bartos returned the supervisor's call, stating he did not intend to report for work over concern of contracting COVID. Later that day, the manager of human resources contacted Bartos, inquiring whether he intended on returning to work. Bartos confirmed he did not have the virus but stated he had no intention of returning to work any time soon. The manager explained to Bartos that he was not eligible for vacation time or sick time.

The next day, Bartos joined a call with the manager and a NJDOT human resources employee, Janice Nelson. Nelson outlined the acceptable reasons for a leave of absence and clarified that absent medical documentation, Bartos was expected to report to work. Bartos inquired whether there was a "special leave" for childcare or rehabilitation. Nelson reiterated that any future absences would require medical documentation.

On April 9, 2020, the NJDOT commissioner emailed Bartos, advising him that his failure to report to work constituted abandonment and requested his response by the end of the business day. When Bartos failed to respond to the email, the NJDOT Commissioner sent a follow-up letter via overnight mail, stating: "We need your decision by close of business, Thursday, April 16, 2020.

3

If we do not hear from you by that time, we will take that as your decision to no longer be employed by [NJDOT]." Bartos did not respond to the letter.

On the morning of April 17, the Director of Human Resources, Michele Shapiro, initiated the disciplinary process for resignation not in good standing pursuant to N.J.A.C. 4A:2-6.2(b), which reads:

> Any employee who is absent from duty for five or more consecutive business days without the approval of his or her supervisor shall be considered to have abandoned his or her position and shall be recorded as a resignation not in good standing. Approval of the absence shall not be unreasonably denied.

Later that day, the NJDOT received medical documentation providing that Bartos was placed on leave effective April 15, 2020 for his re-opened workers' compensation claim. Shapiro determined that the claim had no bearing on the disciplinary matter, reasoning that the workers' compensation claim predated and was unrelated to the disciplinary matter.

On June 10, 2020, the NJDOT issued a Preliminary Notice of Disciplinary Action (PNDA), charging Bartos with resignation not in good standing. N.J.A.C. 4A:2-6.2(b). Bartos did not challenge the PNDA. The NJDOT then issued a Final Notice of Disciplinary Action (FNDA) on July 2, 2020. Both the PNDA and the FNDA referenced the multiple notices sent to Bartos, including the commissioner's letter which set a deadline of April 16, 2020. In issuing the

4                                                          A-3814-22

FNDA, the NJDOT specified that Bartos's "absen[ce] from work for five (5) or more consecutive days without authorization" resulted in his resignation not in good standing.

Bartos challenged the FNDA, and the case was transmitted to the Office of Administrative Law ("OAL") and assigned to ALJ Julio C. Morejon. In a May 22, 2023 written initial decision, the ALJ made the following determinations: (1) Bartos had no intention of returning to work; and (2) the effective date that Bartos can be deemed "resigned not in good standing" is April 16, 2020, as it was the deadline set by the commissioner and the date "recognized in the specifications of charges in the PNDA and FNDA." The ALJ surmised that "the NJDOT selected April 13, 2020, as the 'effective date' . . . because selecting April 16, 2020 (which it [acknowledged] in the FNDA) would have resulted in their inability to charge him." The ALJ concluded that while Bartos had no intention of returning to work, the NJDOT provided him "until at least April 16, 2020, to decide if he would report for duty, which became moot because on April 15, 2020, the NJDOT recognized [Bartos's] worker's compensation claim." The ALJ reversed Bartos's removal and awarded him "back pay, benefits, and seniority."

On July 19, 2023, the Commission issued a final administrative action

A-3814-22

rejecting the ALJ's decision and concluded that the imposed penalty was justified as Bartos abandoned his position under N.J.A.C. 4A:2-6.2(b). The Commission disagreed with the ALJ's determination of April 16, 2020 as the effective date of the resignation. The Commission highlighted that portion of N.J.A.C. 4A:2-6.2(b) indicating "that the five-day threshold begins once the employee is advised of being absent without authorization." The Commission reasoned that Bartos "at the latest knew from his superior, on April 7, 2020, that his continued absence was unauthorized without medical documentation." Accordingly, the Commission determined that the five days ended on April 14, 2020. The Commission also asserted that the medical documentation provided for the April 15 workers' compensation leave is "unrelated to the reasons for his failure to return on April 6, 2020."

## II.

Bartos maintains the Commission's decision to uphold the resignation not in good standing was arbitrary and capricious because the Commission: (1) failed to consider the letter sent by the Commissioner, which set April 16, 2020 as the deadline for Bartos to respond; (2) unreasonably concluded Bartos abandoned his job; and (3) failed to consider that the NJDOT's denial of leave of absence was unreasonable. We agree.

6

"An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 27-28 (2007). This court "ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-W. Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). In the absence of such a showing, this court "owes substantial deference to the agency's expertise and superior knowledge of a particular field." Herrmann, 192 N.J. at 28.

However, an agency's legal determinations "do not carry a presumption of validity" because "it is for this court to decide whether those decisions are in accord with the law." Parsippany-Troy Hills Educ. Ass'n v. Bd. of Educ., 188 N.J. Super. 161, 165 (App. Div. 1983).

When, as here, a contested case is submitted to the OAL for a hearing, the agency head must review the record submitted by the ALJ and give attentive consideration to the ALJ's initial decision. N.J. Dep't of Pub. Advoc. v. N.J. Bd. of Pub. Utils., 189 N.J. Super. 491, 500 (App. Div. 1983). The agency head

remains the primary factfinder and maintains the ultimate authority to reject or modify findings of fact, conclusions of law, or interpretations of agency policy. Id. at 507; see also N.J.S.A. 52:14B-10(c); N.J.A.C. 1:1-18.6(c). Nonetheless, ALJs are not mere conduits for transmitting evidence to the agency head, and they should not be considered "second-tier players or hold an inferior status as factfinders." In re Hendrickson, 235 N.J. 145, 160 (2018).

When an agency head strays from the factual findings of an ALJ, we need not accord the agency head the level of deference we ordinarily recognize in reviewing final administrative decisions. See H.K. v. State, 184 N.J. 367, 384 (2005); Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587-88 (1988) (noting that Appellate Division need not have deferred to an agency head on an issue of credibility of witnesses when it was ALJ, and not the agency head, who heard live testimony and who was in best position to judge witnesses' credibility).

After reviewing the record to determine whether sufficient consideration was given to the ALJ's findings, it is apparent that the agency's attentiveness to the ALJ's findings was wanting. In reliance on the controlling case law, we review those findings in greater detail.

ALJ Morejon conducted a hearing on August 25, 2021. At that hearing, the judge heard from various human resources personnel presented as witnesses

by the NJDOT. He also heard testimony from Shapiro and Bartos. While the judge found all witnesses generally credible, he made a series of critical findings. Specifically, the judge found that on April 6, 2020, Bartos informed the human resources manager at NJDOT via recorded voicemail that while he was not prepared to report for regular duty, he was prepared to report to work for an emergent "weather-[related]" event or "some accident" "till the cows come home." Whether this unilateral condition by Bartos constituted a refusal to return to work as determined by the NJDOT became a "moot" point in the court's mind, as we have recounted, because Bartos was granted temporary Worker's Compensation effective April 15, 2020. The ALJ specifically found that the effective termination date of April 13, 2020 as determined by NJDOT and transmitted in the FNDA to be of no moment, selected solely for the purpose of justifying termination on a date preceding April 15.

Judge Morejon wrote:

> Shapiro testified that the FNDA effective date of April 13, 2020, was appropriate despite the Commissioner's letter giving Bartos until April 16, 2020, and the NJDOT re-opening of Bartos'[s] worker's compensation case on April 15, 2020, because after April 3, 2020, Bartos had communicated to NJDOT that he had no intention of coming back to work due to his concerns with Covid-19. In addition, Shapiro stated that the April 13, 2020 date selected because that is the

9

date NJDOT had calculated as Bartos'[s] return to work from his quarantine that had ended on April 4, 2020.

. . .

I **FIND** Shapiro's testimony concerning the effective date of April 13, 2020 contained in the FNDA to be inconsistent with the dates stated in the specifications of the PNDA and FNDA, and that the same are in contradiction with the dates provided Bartos to inform the NJDOT of his decision to return to duty.

. . .

I **CONCLUDE** the record reveals that on April 17, 2020, the NJDOT had already determined that Bartos'[s] conduct was tantamount to an abandonment of his work duties, and that the NJDOT selected April 13, 2020 as the "effective date" date of the same because selecting April 16, 2020 (which it selected in the FNDA) would have resulted in their inability to charge him with N.J.A.C. 4A:2-6.2(b) in obtaining his separation date.

[(Emphasis in original).]

In sum, Judge Morejon reasonably found, as a fact, that the NJDOT arbitrarily selected the date of April 13 as the date of abandonment inconsistent with its own notices and for the sole purpose of denying the relief sought. Stated otherwise, the NJDOT acted arbitrarily and capriciously in determining a date of separation inconsistent with the record. "A determination predicated on unsupported findings is the essence of arbitrary and capricious action." Bryant v. City of Atlantic City, 309 N.J. Super 596, 610 (App. Div. 1998).

We, thus, reverse the final agency decision and remand the matter to the Commission for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division